## BRADSHAW v. JONES.

### (*Knoxville.*   October 18, 1899.)

1. SEDUCTION. *What is.*

   In seduction it is enough to sustain plaintiff's case that her willingness or consent to the illicit act was not the result of her own sexual desire or curiosity, aroused by mere opportunity, but was induced by acts and conduct, of whatever nature, of the defendant, without which there would have been no willingness or consent on her part.   The effectiveness of the defendant's acts and conduct to induce the plaintiff's consent rather than their nature, is the material inquiry.   The character and situation of the parties, their intelligence, education, etc., are material matters for consideration in determining the nature of the female's consent.   (*Post, pp. 332–337.*)

   Cases cited: Reed v. Williams, 5 Sneed, 580; Franklin v. McCorkle, 16 Lea, 628; Graham v. McReynolds, 90 Tenn., 678; Ferguson v. Moore, 98 Tenn., 342.

2. SAME. *Verdict supported.*

   The facts set out in the Court's opinion, support a judgment of $2,250 for the plaintiff.   (*Post, pp. 332, 335, 336.*)

3. EVIDENCE. *Confirmatory statements.*

   In an action for seduction it is competent to support the plaintiff's evidence on the trial by her confirmatory statement, made next morning after her seduction, giving her version of the affair, especially when it was vigorously assailed and stoutly disputed and denied by defendant.   (*Post, p. 338.*)

---

#### FROM JEFFERSON.

---

Appeal in error from Circuit Court of Jefferson County.   W. R. HICKS, J.

Bradshaw v. Jones.

SHIELDS & MOUNTCASTLE and S. G. HEISKELL for Bradshaw.

TEMPLETON & CARLOCK and I. L. MOORE for Jones.

WILKES, J. The plaintiff, Jones, who is a minor, by her father as next friend, sued the defendant, Bradshaw, for $10,000 damages for seduction. There was a trial before the Court and a jury and a verdict for $5,000. A remitter of $2,750 was entered, and judgment was rendered for $2,250 and costs, and defendant has appealed and assigned errors. It is said there is no evidence to support the verdict.

The main contention is that upon the testimony of the plaintiff herself it is not a case of seduction, but simply a case of illicit intercourse, indulged in voluntarily by both parties, and without such promises, inducements, solicitations, or importunity as would make it seduction. It is difficult to draw the line between seduction and mere illicit intercourse which is not actionable. Our cases go as far as any to sustain the action. In *Reed* v. *Williams*, 5 Sneed, 580, it was said that it was not necessary for the plaintiff to show that the defendant had used flattery or made false promises to accomplish his purposes, but it would be sufficient if the seduction resulted from the solicitation and importunity of the defendant to indulge in criminal intercourse, in consequence of which she consented. The Court said it is enough

that by any means or acts he tempted or persuaded his victim to the surrender of her chastity. This case is approved in *Franklin* v. *McCorkle,* 16 Lea, 628, and the Court said: "The cause of action is complete under our law without any promise of marriage, or anything more than solicitation and importunity, to which the female yielded." It is further said in that case that the surrender of chastity is the cause of action, the means by which this is induced is immaterial, except in aggravation of damages.

Both of these cases are referred to in *Graham* v. *McReynolds,* 6 Pickle, 678, and approved, and the learned special Judge in that case says that persuasion alone is sufficient, if yielded to; and the force of the holding is emphasized by the dissent of Lea, Judge, that persuasion alone should not be held sufficient. *Id.,* 6 Pickle, 704. In the later case of *Ferguson* v. *Moore,* 14 Pickle, 342, *et seq.,* the trial Judge charged the jury that in order to constitute seduction it was not indispensable that the man use seductive arts or promises, but any act or promise or deception of the man, by which he overcomes the scruples of the woman and induces her to have unlawful sexual intercourse with him, would constitute the offense. But if the woman, without being deceived and without any false promises, deception, or artifice, voluntarily submits to the connection, the law affords her no remedy, and she cannot recover. The ex-

ception was made by the defendant, and it was insisted the law was too strongly stated against him, but it was said to be not erroneous, but a plain, simple statement of the law that any jury could understand and not misconstrue. It was a case where it was claimed there were promises of marriage made to accomplish the act.

We cannot hold that consent or willingness upon the part of the female to the act of intercourse will prevent its being a case of seduction; on the contrary, the willingness of the female is one of the essential elements of seduction, and is the feature which, more than all others, distinguishes seduction from rape. The crucial question in the case is: Does the willingness arise out of the sexual desire or curiosity of the female, so that she only needs opportunity for the commission of the act, or is that willingness induced by some act, representation, or statement of the man, in the absence of which there would be no willingness upon the part of the woman? In the latter case there is seduction; in the former there is not. The Courts have never defined what acts would be sufficient, nor how pressing should be the importunities, nor how often repeated the solicitations to make the case one of seduction. It would be impossible to formulate any state of facts that would be required. It will be seen, however, from our decisions that any act, solicitation, or statement which overcomes the unwilling-

ness of the woman and causes her to yield her virtue is sufficient.

It appears that the girl in this case was nineteen years of age. She was employed in the defendant's family as a domestic. Defendant's wife left home for a visit to Knoxville, leaving her husband and the girl alone in the residence, which was a farmhouse in the country. He appears to have been a man of standing and influence in the community where he lived. Her statement of the transaction is that she and the defendant were sitting by the fire. He was, as she states, threading up his shoes to come to Knoxville the next morning, and when through with that moved over on the other side of the lamp to read. After a little while he threw the book down, moved over by the plaintiff's side, commenced picking at her, and asked her if she would not like to be married and have an old man to sleep with on cold nights. She replied that she did not care anything about it. He asked her if she would not sleep with him, and she told him no, that she did not want to. He then asked her to sleep with him, just to please him, and she replied she would not. He thereupon pulled her upon his lap and kept her there for a while, put his hand under her dress, and asked her again if she was going to sleep with him, and she replied, "no," and he said "she would." He put her down and got ready for bed. He previously had off all his

Bradshaw *v.* Jones.

outer clothing but his pants. She picked up the lamp and started out of the room. He caught her. She said "she was going," and he replied "she was not," blew out the light, took her up and put her on the bed in her clothing, and got into it, and the act was at once consummated, and was repeated that night; that he said nothing after getting in bed, but at some time in the interview, told her that he could not beget a baby. He had never said anything to her previous to this occasion, and whether anything further was done after that night is left in some doubt under the record. It is stated the girl remained at the house for two nights, but not definitely that further intercourse was had.

We must look to all the circumstances to reach the true merits of the controverted question. Under the finding of the jury we must conclude that at this time she was virtuous, otherwise in no event could they have given a verdict. The trial Judge so expressly and correctly charged. Now the defendant was a man about forty-four years of age. He had been married some four or five years, and his wife had borne him no children. The girl was in his employ, a hireling. She was alone with him in a farmhouse. She is, as appears by the record, an uneducated country girl. She shows by her refusals when asked that she was not originally willing to consent; but when she was caught and the defendant manifested his purpose to have inter-

course with her, she made no physical resistance and uttered no outcry. It may be, and probably did present itself to her that resistance and outcry would be useless. While a girl of more refinement and more education and a keener sense of the dignity of her womanhood would have resisted and would have screamed and would not have submitted, except to overpowering force, she may have thought that such a course would be useless and perhaps endanger her life, while a quiet submission would result in no great injury. In this respect he may have deceived her by saying he could not beget a baby, and she may have entertained such a belief from this assurance of his and from the fact that he had no children, although he had been married for several years, and hence her fears were lulled and quieted.

We are of opinion, therefore, that under all these circumstances the defendant accomplished his purpose by his importunities, deception, actions, and assurances, and while they were not such as would usually prevail, they were sufficient in this instance. His assurance to her of his impotency was designed by him to lull her fears and apprehensions and induce her to submit. This, with his other acts was sufficient under our cases to make out seduction. We do not pass upon the sufficiency of the evidence. It is conceded there is enough to sustain the verdict under the rule.

19 P—22

Some exceptions are made to the testimony. They are general and we think not well made. Her statements made on the next morning after the transaction are competent to sustain her version of the affair, especially when it was vigorously assailed and stoutly disputed and denied by him. Indeed we cannot see that they added to the strength of her case, but to the contrary, and the error, if one, was immaterial, not hurtful.

The verdict as rendered below is not excessive, and it is affirmed with costs.