*J. D. Bower Jr.,* for plaintiffs.   *R. G. Hartsfield,* for defendant.

MOSLEY *v.* LYNN *et al.*

194

No. 7788.   FEBRUARY 13, 1931.

*W. T. Burkhalter,* for plaintiff.

*H. H. Elders* and *C. L. Cowart,* for defendants.

RUSSELL, C. J. (After stating the foregoing facts.) The judgment of the court below is erroneous, in that it entirely confuses seduction as a tort, for which damages may be recovered in a proper action, with seduction as a crime, with sentence imposed for the commission of such crime. The definition laid down in the Penal Code, § 378, which imposes a penalty of from one to twenty-years for the offense therein defined, has nothing whatever to do with the seduction of a female child as the basis of an action for damages on the part of the mother under the provisions of the Civil Code, § 4466. It must be borne in mind that the criminal offense of seduction was unknown to the common law. It is of purely statutory origin; and it is to be more strictly construed, because it is in derogation of the common law. Words are generally to be given their ordinary, usual, popular signification in popular use; but when a criminal offense is denominated by a particular word or term which is defined, the State is so careful of the rights of its citizens that every ingredient of the definition must be supplied before the commonwealth will permit the citizen to be deprived of his liberty. It is true that when one is upon trial for the offense of seduction, the exact definition of the Code must be supplied by proof. The meaning of the word "seduction," as employed in legal strictness in the Penal Code, has nothing to do with the ordinary and usual meaning of the term. The word "seduction" came from two Latin words; se, which means apart, or away from; and ducere, to lead. To seduce persons means simply to lead them away or astray, whether it be from a physical object, or from the path of correct morals, or a correct course of any kind in the affairs of life. It is not always dependent upon the idea, and does not necessarily involve the thought, of sexual intercourse. Again, even in a case involving sexual intercourse, the word seduction is not properly used to convey the same meaning which would be necessary to enforce the conviction of one charged with the offense of seduction. It is an everyday expression to say of parties involved in what is known as "the eternal triangle" that So and So seduced Jones's wife, when of course under our criminal statute there can be no seduction, within the terms of the Penal Code, if the female is married. In common parlance it is not unusual to say that Smith's wife seduced Jones and he left Mrs. Jones and took up with her; and the books are full of cases, some of which we shall hereinafter

refer to, in which, as in this case, the offense actually committed was that of adultery and fornication, and yet it was held that in civil actions they were properly treated, discussed, and ruled upon as statutory actions for damages for seduction. There could be no case for seduction of a husband under our penal statute; and yet there might be a civil remedy, as there is already in other states of this Union, for the seduction of a married man to the damage of his wife.

This action is predicated upon section 4466 of the Civil Code, as follows: "The seduction of a daughter, unmarried and living with her parent, whether followed by pregnancy or not, gives a right of action to the father, or to the mother if the father be dead, or absent permanently, or refuses to sue. No loss of service need be alleged or proved. The seduction is the gist of the action, and in well-defined cases the damages should be exemplary." It is to be noted that it is not of common-law origin, but, on the contrary, supplants and is a substitute for the common law. Prior to the adoption of this statute by its incorporation into the Code of 1863 (§ 2951) the common law as to all torts was declared in what is now § 4412 of the Civil Code of 1910, in which it is stated that "Every person may recover for torts committed to himself, or his wife, or his child, or his ward, or his servant." Loss of service was the gist of the action at common law. Loss of service need not be alleged or proved. § 4466 changed the common-law rule, which required proof of loss of service. *Kendrick* v. *McCrary,* 11 *Ga.* 603. It is an exception to § 4412 codifying the common law. The right of recovery in the *Kendrick* case was predicated upon the fiction which assumed the relation to be that of master and servant, and not that of father and child. § 4466 effected another change from the common law, in that at common law the mother, not being entitled to the services of the child, was not entitled to recover for loss or deprivation of such services. In the case cited, McCrary sued Kendrick for the seduction of his daughter, and the jury returned a verdict for $1,049. The daughter was 21 years old, there was no contract for services between her and her father, and the service rendered was voluntary. The court held in effect that the case rested upon a presumption based upon the fiction, and Judge Lumpkin, delivering the opinion, said: "It matters not how small the service she rendered; though it may have consisted

in milking his cows, or even pouring out his tea, he is entitled to his action," citing Carr *v.* Clark, 1 Chitty, 261; Mann *v.* Barrett, 6 Esp. 23. "Indeed; as shown by the cases cited under the other head, it has been decided that the father need not prove any actual service rendered, if at the time of the seduction she lives with her father, or is under his control; and that, too, whether she is a minor or an adult." And in Joseph *v.* Cowan (citing 2 Stephens' N. P. 2354, and Roscoe on Ev. 493) it was held that the father can maintain the action even if he turned his daughter out of doors. Lord Ellenborough, in Irwin *v.* Dealman, 1 East, 24, said: "However difficult it may be to reconcile to principle the giving of greater damages, the practice is become inveterate, and can not now be shaken." In Tulledge *v.* Wade, 3 Wils. 18, Chief Justice Wilmot remarked: "Actions of this sort are brought for example's sake; and although the plaintiff's loss in this case may not really amount to the value of twenty shillings, yet the jury have done right in giving liberal damages." In Tilleston *v.* Cheatham, 3 Johns. 56 (3 Am. D. 459), quoting the foregoing cases with approbation, the court said: "The actual pecuniary damages, in actions for defamation as well as in other actions for loss, can rarely be computed, and are never the sole rule of assessment."

The Supreme Court of North Carolina, in Briggs *v.* Evans, 27 N. C. (5 Ired. L. 16), in getting away from the old fiction to which we have alluded, and which is thrown into discard in Georgia in the adoption of section 4466, used this strong language: "The second exception is equally as untenable as the first. It assumes that the only consequential injury to the father, of which he has a right to complain, consists in the loss of the services of his daughter, and the expenses he may incur during her confinement. This certainly is not so. If it were so, and pregnancy did not result from the seduction, the father would have no action. All the authorities show that the relation of master and servant, between the parent and child, is but a figment of the law, to open to him the door for the redress of his injuries. It is the substratum on which the action is built; the actual damages which he has sustained, in many, if not in most cases, exists only in the humanity of the law, which seeks to vindicate his outraged feelings. He comes into the court as a master; he goes before the jury as a father." And so in Georgia, by one of the changes worked in the common

law the plaintiff in this case goes before the jury as a mother. Judge Lumpkin, concluding the opinion upon this subject, used the following language, to which the writer subscribes: "Never, so help me God, while I have the honor to occupy a seat upon this bench, will I consent to control the jury, in the amount of compensation which they may see fit to render a father for the dishonor and disgrace thus cast upon his family; for this atrocious invasion of his household peace. There is nothing like it, since the entrance of Sin and Death into this lower world. Money can not redress a parent who is wronged beyond the possibility of redress; it can not minister to a mind thus diseased. Give to such a plaintiff all that figures can number, it is as the small dust of the balance. Say to the father, there is $1049, embrace your innocent daughter for the last time, and let her henceforth become an object for the hand of scorn to point its finger at. What mockery! And yet this is the identical case we are considering. It has been truly said that more instructive lessons are taught in the courts of justice than the Church is able to inculcate. Morals come in the cold abstract from the pulpit; but men smart under them practically, when juries are the preachers. In cases of deliberate seduction, there should be no limitation to verdicts, because there is none to the magnitude of the injury."

In Dwire v. Stearns, 44 N. D. 190 (172 N. W. 69), in which the plaintiff (as in the case at bar) was a widow with minor children, and whose daughter, a girl of 17 years, was induced to have unlawful sexual intercourse with the defendant, without seemingly much inducement except solicitation, and accepted five dollars from the defendant after mentioning that she was afraid to go home and thought she would leave town, the court held: "In an action for the violation of the personal relation brought by the parent, for the debauching of her daughter, aged 17 years, the chastity of the daughter is presumed. . . In such action, whether the wrong be termed seduction or unlawful enticement, it is the act of securing or procuring the debauching of the daughter, and the civil liability therefor is not prescribed by the statutory definition of criminal seduction. . . In such action, when actual or constructive loss of the service has been established under the legal fiction pursuant to which such action is maintained, damages may be recovered for all that the parent has suffered through the

ruin of the daughter, and the disgrace occasioned, including exemplary damages. . . Seduction as a civil injury may be generally defined as the act of a man in inducing a virtuous woman to commit unlawful sexual intercourse with him." The Supreme Courts of many States have defined the word "seduction," when applied to the conduct of a man towards a woman, to mean the use of undue influence, artifice, promise, or means on his part by which he induces a woman who is then and has theretofore for a reasonable time been a woman of chaste conduct, to submit to unlawful intercourse with him. Stowers v. Singer, 113 Ky. 585 (68 S. W. 637-9.) Where an unmarried man, by his attention to an unmarried female, gains her affection and confidence, and importunes her to sexual intercourse with him, and through her confidence in him and love for him she yields to his solicitations, it is seduction. Bell v. Rinker, 29 Ind. 267. Seduction is any act, solicitation, or statement by a man which overcomes the unwillingness of a woman and causes her to yield her virtue. Bradshaw v. Jones, 103 Tenn. 331 (52 S. W. 1072, 76 Am. St. R. 655). "Seduction" as used in the General Statutes 1894, section 5162, giving a father a right to a civil action for the seduction of his daughter, is not to be taken in the technical and limited sense in which it is used in a common-law action by a father for the seduction of his daughter. In such actions, "seduction" and "debauching" were used as substantially similar terms, and it was not important which word was used in the declaration. Hein v. Holdridge, 78 Minn. 468 (81 N. W. 522). "Seduction" and "debauching" are in civil cases very generally used as substantially similar terms, and the term "debauching" is used by Twitty in his Forms as the proper word for such misconduct with a servant or member of a family as gives grounds of action. We do not think it important which word is used in the pleadings. Stoudt v. Shepherd, 73 Mich. 588 (41 N. W. 696-7). If one act of carnal intercourse to which the plaintiff's consent was obtained by a promise of marriage made by the defendant at the time, and to which without such promise she would not have yielded, constitutes the offense of seduction or debauching as clearly as if it were the first act of intercourse induced by a like promise, if the first act was seduction because her assent was obtained by such promises, no good reason can be discovered why the second or any subsequent intercourse, by which

her consent was obtained by the same means will not equally constitute the offense.

Worcester's Dictionary defines the legal meaning of seduction to be "the offense of a man who induces a woman to surrender her chastity. This is strictly accurate both philologically and according to the common and well-understood meaning of the term. It is deflowering a woman of her virginity." It may also, by some of our cases, be where a woman, after having been seduced, has again returned to the path of virtue; but in both of these cases the act is complete when the chastity of the party has been surrendered. Franklin v. McCorkle, 84 Tenn. (16 Lea ) 609-13 (1 S. W. 250, 57 Am. R. 244). Where a party charged with seduction boasted of his wealth, and promised the unfortunate woman that he would provide for her if she would yield her person to his embraces, which were renewed from day to day until she finally yielded, it constituted seduction. Johnson v. Holliday, 79 Ind. 151-153. In order to charge seduction it is not necessary that the manner of accomplishing the act or the circumstances attending it should be set out. The allegation that the defendant "did seduce" implies that the act was done by flattery and false promises or the exercise of other influence. Voluntary intercourse, without being secured by such influence on the part of the defendant, would not amount to seduction. By the use of the word "seduce," which is defined by Webster to mean "to draw away from the path of rectitude and purity in any manner, by flattery, promises, bribes, or otherwise," the acts which render the defendant liable are sufficiently charged. Brown v. Kingsley, 38 Iowa, 220-224. Seduction is the act of a man inducing a woman to commit unlawful intercourse with him; and it is not essential, in order to maintain an action, that there should be a promise of marriage. Milliken v. Long, 188 Pa. 411 (41 Atl. 540). The action at common law known as "action for seduction" would only in fact have been an action in trespass for loss of services. The person entitled to the services of the party seduced could maintain an action, but none other could. Bartley v. Richtmyer, 4 N. Y. 38 (53 Am. D. 338). The common law gave no remedy to the parent for the seduction of his daughter, however wrongfully it may have been accomplished. Incontinence on the part of a young woman could not be made the foundation of an action against the person who has tempted her and deprived her

of her chastity; but if she is living with her parent at the time of the seduction, and the seduction is followed by pregnancy and illness, whereby the parent is deprived of the filial services theretofore rendered to him, an action is maintainable against the seducer. Addison on Torts, 1274. The foundation of the action was not based upon the seduction itself, but upon the loss of services. Breon *v.* Hinkle, 14 Ore. 494 (13 Pac. 289). It will be seen that by striking out of section 4466 the provision entitling a parent to an action for loss of services (which was the entire basis of the common-law action), the parent's proceeding was made and became entirely a statutory right. The State of Georgia in the adoption of the Code put itself in line with the trend of modern jurisprudence in every jurisdiction which has substituted statutory enactments for the common law. It has been held that seduction as a civil injury is a matter entirely distinct and apart from seduction as a criminal offense. Seduction as a civil injury is personal; as a penal offense it is public. As a civil injury, the term denominates an injury to the parent which arises out of any unlawful sexual intercourse in which the child is induced to participate by the arts or wiles of the seducer. "Seduction, as a civil injury, may generally be defined as the act of a man in inducing a virtuous woman to commit unlawful sexual intercourse with him." This rule has been applied by the courts, whether the unlawful intercourse is adultery or adultery and fornication, or the statutory seduction, and it has been applied even in cases of rape.

*Judgment reversed. All the Justices concur, except Beck, P. J., absent for providential cause.*