S92A1279. VAN DYCK v. VAN DYCK.
(425 SE2d 853)

HUNT, Presiding Justice.

We granted this application for interlocutory appeal to determine

---

whether OCGA § 19-6-19 (b) (the "live-in lover" statute) permits the modification of alimony when a former spouse is living in a meretricious relationship with a person of the same sex. We find the plain language of the statute does not permit modification in these circumstances. Accordingly, we reverse the trial court's denial of the former wife's motion to dismiss the former husband's complaint for modification.

In his complaint, the former husband sought termination, under OCGA § 19-6-19 (b), of his alimony obligation, alleging only that the former wife was involved in a homosexual meretricious relationship. The trial court denied the wife's motion to dismiss the complaint for failure to state a claim. The trial court, relying on legislative goals and intent, concluded that OCGA § 19-6-19 (b) permits modification where an alimony recipient is sharing living quarters and, therefore, expenses, with another person of *either* sex. The trial court concluded, as well, that any other construction of the statute would render it unconstitutional as a violation of the Equal Protection Clause of the United States Constitution.

OCGA § 19-6-19 (b) provides, in pertinent part:

> Subsequent to a final judgment of divorce awarding periodic payment of alimony for the support of a spouse, the voluntary cohabitation of such former spouse with a third party in a meretricious relationship shall also be grounds to modify provisions made for periodic payments of permanent alimony for the support of the former spouse. As used in this subsection, the word "cohabitation" means dwelling together continuously and openly in a meretricious relationship *with a person of the opposite sex.* (Emphasis supplied.)

Thus, the plain language of the statute does not apply where the former spouse is involved in a homosexual relationship.

> " 'It is, of course, fundamental that "the cardinal rule to guide the construction of laws is, first, to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose." [Cits.]' " Although "the legislative intent prevails over the literal import of words" [cit.] "where a constitutional provision or statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms. [Cits.]" [Cit.] "In other words the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evi-

dence of the ultimate legislative intent." [Cits.]

*Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981). In light of the clear and unambiguous language of the statute, which allows modification on a finding of a meretricious relationship between the alimony recipient and *"a person of the opposite sex,"* the trial court was not authorized to construe the language of the statute otherwise. If, in fact, the legislature intended the statute to allow modification on the finding of the alimony recipient's cohabitation with a person of either sex, but see *Sims v. Sims*, 245 Ga. 680 (266 SE2d 493) (1980), it is the duty of the legislature, rather than the courts, to amend the statute.

Nor does the statute, construed as required by its plain language, violate the Fourteenth Amendment of the United States Constitution, under the U. S. Supreme Court's holding in *Orr v. Orr*, 440 U. S. 268 (99 SC 1102, 59 LE2d 306) (1979). Following the Supreme Court's ruling in that case, and our holding in *Sims v. Sims*, 243 Ga. 275 (253 SE2d 762) (1979), the legislature amended the former "live-in lover" statute — which allowed modification based only on a former wife's cohabitation with a man — to its present form, allowing modification of alimony payments to either former spouse, where the former spouse is cohabiting in a meretricious relationship with a person of the opposite sex. Ga. L. 1979, pp. 466, 483, § 23. Thus, the statute applies equally to former spouse/alimony recipients of either sex, and is not unconstitutional under *Orr v. Orr*, supra.

*Judgment reversed. Clarke, C. J., Benham, Fletcher, Sears-Collins, Hunstein, JJ., and Judge Dewey Smith concur.*

SEARS-COLLINS, Justice, concurring.

Alimony is based on an ex-spouse's need, and if in reality that need decreases, alimony probably should be reduced or even terminated. Logically, it should make no difference whether the ex-spouse has remarried, is living in a meretricious relationship with a person of the opposite sex or is living with a gay partner. In a perfect world it ought to be the financial reality that counts.

But this is not yet a perfect world. While the relationships of married couples are clearly defined by law, lesbian and gay couples in America today cannot legally marry, no matter how deep their love and how firm their commitment. Thus, unlike those couples of the opposite sex who live together but are not married, they are *forever* denied the numerous legal rights that come with marriage. These rights include the right to: a) file joint income tax returns; b) create a marital life estate trust; c) claim estate tax marital deductions; d) claim family partnership tax income; e) recover damages based on injury to a partner; f) receive survivor's benefits; g) enter hospitals, jails and other places restricted to "immediate family"; h) live in neighbor-

hoods zoned "family only"; i) obtain "family" health insurance, dental insurance, bereavement leave and other employment benefits; j) collect unemployment benefits if they quit their job to move with their partner to a new location because he or she has obtained a new job; k) get residency status for a noncitizen partner to avoid deportation; l) automatically make medical decisions in the event a partner is injured or incapacitated; m) and automatically inherit a partner's property in the event he or she dies without a will. Many of the other legal consequences of gay "coupling" are not so immediately apparent, but surface only at times of stress — misunderstandings, separation and death.[1]

In view of the foregoing, it is clear that the law does not encourage permanent gay "coupling" arrangements by providing them either the same acceptance and support or the same governmental, legal or social service benefits or the many tax and other economic benefits accorded married couples.

It would not be fair to expand OCGA § 19-6-19 through judicial interpretation so as to saddle gay and lesbian couples with a penalty accorded unwed heterosexual couples who live together who have the choice of taking advantage of the benefits of marriage without according homosexual couples who live together the benefits of a relationship that for them can never happen under the law. To do so would only appear to be fair. In truth and in practice, however, it would not be fair at all.

DECIDED FEBRUARY 8, 1993.

*Frankel, Hardwick, Tanenbaum & Fink, Martha J. Kuckleburg,* for appellant.

*Winburn, Lewis & Barrow, Gene Mac Winburn, John J. Barrow, Albert M. Pearson III,* for appellee.

---

[1] H. Curry and D. Clifford, A Legal Guide for Lesbian and Gay Couples 1:2 (1991).