## A93A2194. BRAYMAN v. DELOACH et al.
### (439 SE2d 709)

BLACKBURN, Judge.

The appellant, C. B., a minor, by her next friend and natural

guardian, Shirley Brayman, her mother, filed the instant action for damages based upon state and federal law against appellees Glynn County, James Miller and Barbara Little, and Deborah Deloach, based upon a lesbian sexual relationship which developed between Deloach and the minor child following the minor's participation in recreation programs sponsored by the county. Glynn County, Miller, and Little collectively responded to the complaint and asserted several defenses. Following the commencement of discovery, Glynn County, Miller and Little moved for summary judgment.[1] After a hearing, the trial court granted the motion in favor of appellees Glynn County and Miller on both the state and federal claims, and in favor of appellee Little solely on the state claim. This appeal followed.[2] In Brayman's sole enumeration of error, she challenges the trial court's grant of summary judgment in favor of the appellees.

Viewing the facts in the light most favorable to the non-moving party, *Lau's Corp. v. Haskins*, 261 Ga. 491 (4) (405 SE2d 474) (1991), the record shows that Deloach and Little were employed with the Glynn County Parks & Recreation Department under the supervision of Miller, the director of the department, at all times relevant to this action. C. B. met Little and Deloach during the spring of 1989 as a result of C. B.'s participation in a recreation softball program sponsored by the county. Deloach later began showering C. B. with various gifts as the two developed a close friendship which included frequent visitation and telephone communication. Little and Deloach befriended C. B.'s parents and younger brother, and were invited to the Braymans' home on several occasions. Mrs. Brayman even insisted that C. B. share a room with Deloach on a road trip with the softball team in 1989 as she trusted Deloach to supervise the minor's activities.

Thereafter, the Braymans noticed that C. B. had been spending a great deal of time with Deloach and her contact with friends of similar age had diminished. In January 1990, Mrs. Brayman met with Deloach and another county employee and requested that Deloach cease her interaction with C. B. At that time, Deloach indicated that she could not do so. In February, at Brayman's request, a certified letter was sent to Deloach by Brayman's attorney instructing her to refrain from communicating with C. B. At that point, many of the gifts given to C. B. by Deloach were returned to Deloach. However, C. B. and Deloach continued to see and communicate with each other.

In June 1990, the Braymans made their first complaint to Miller and informed him of Deloach's continued association with and undue

---

[1] Although the complaint was filed on April 5, 1991, Deloach responded to the complaint on July 29, 1992, within 30 days after service of the complaint on June 29, 1992.

[2] Neither Deloach nor Little have appealed the trial court's order.

influence over their daughter, but denied any sexual involvement between the two. In addition to recommending that the Braymans prosecute Deloach if they suspected any wrongdoing, the next day, Miller questioned Deloach on the nature of her relationship with C. B. Although Deloach indicated that C. B. had made allegations of physical abuse against her parents, and that she was attempting to assist her with the problem, Miller instructed her to refrain from communicating with the minor. Deloach denied that the two were sexually involved. It was not until January 30, 1991 that Miller was informed of the sexual relationship that had developed between C. B. and Deloach based upon taped conversations between the two. Deloach was immediately suspended pending an investigation of the allegations, and a hearing was subsequently scheduled on her proposed discharge based upon the county's concern with the protection of minor participants in its recreational programs. Deloach resigned prior to the scheduled hearing.

In her deposition testimony, C. B. admitted that Little often facilitated the communication between the two by providing transportation, conveying messages, and transferring her telephone calls to Deloach although the recreation personnel were admonished from promoting communication between the two. It is undisputed that the actions of Little and Deloach were not done under the direction of or ratified by the county.

1. In Brayman's state law claim, she asserts that "Deloach began to have sexual relations with [C. B.] and contributed to the delinquency of [C. B.] on numerous occasions over the past two years." Brayman further alleges that "Little aided and abetted the Defendant Deloach and contributed to the delinquency of [C. B.] on numerous occasions over the past two years," while the two were under the supervision of Miller as the director of the department. Hence, Brayman has asserted an action sounding in tort based upon the alleged seduction of her minor daughter by Deloach.[3]

Under OCGA § 51-1-16, "[t]he seduction of a daughter, unmarried and living with her parent, whether followed by pregnancy or not, *shall give a right of action to the father or to the mother* if the father is dead, or absent permanently, or refuses to bring an action." (Emphasis supplied.) "The statute, on its face, provides that only a parent of a seduced daughter has the requisite standing to bring an action for seduction. Therefore, [C. B.], the alleged victim of seduc-

---

[3] Although Brayman asserts in her complaint that the appellees are liable for damages based upon assault, she has failed to allege a cause of action based upon this tort in her complaint, and this issue was not passed upon by the trial court. Accordingly, this issue is not ripe for appellate review. *Devins v. Leafmore Forest Condo. Assn. of Owners*, 200 Ga. App. 158 (3) (407 SE2d 76) (1991).

tion, cannot bring a valid cause of action under [the statute] in her own name through [Mrs. Brayman] 'as next friend.' Accordingly, we find that [Brayman] cannot pursue a cause of action on behalf of her daughter. . . ." *Franklin v. Hill*, 203 Ga. App. 724, 725 (1) (417 SE2d 721) (1992). Moreover, there is no evidence in the record on appeal that Mr. Brayman has refused to bring an action based upon the seduction of his daughter. In fact, Mr. Brayman actively participated in the discovery process in the case sub judice. Consequently, Mrs. Brayman lacks standing to assert this cause of action in her own right or on behalf of her daughter, and the appellees were entitled to summary judgment as a matter of law.

2. Brayman also asserts liability predicated on 42 USC § 1983. "42 USC 1983 creates a cause of action, cognizable in the courts of this state, based upon acts which are in implementation of an *intentional policy*, adopted or ratified by the governing body of a public agency, which acts work deprivation of a constitutional right." (Citation and punctuation omitted.) *Poss v. City of North Augusta, S.C.*, 205 Ga. App. 894, 895 (2) (424 SE2d 73) (1992). "What is required to be prove[n], directly or circumstantially, is that a governing body has worked constitutional deprivation of a citizen pursuant to an impermissible or corrupt policy which is intentional and deliberate." (Citation and punctuation omitted.) *Kilgo v. Dept. of Corrections*, 202 Ga. App. 50, 51 (413 SE2d 507) (1991). " '(A) local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.' [Cit.]" *Poss*, supra; *Jarrett v. Butts*, 190 Ga. App. 703, 707 (379 SE2d 583) (1989).

In the case sub judice, "the record is barren of any evidence of implementation of an intentional policy or a constitutional deprivation resulting from an intentionally corrupt or impermissible policy so as to find a cause of action under 42 USC § 1983." (Citations and punctuation omitted.) *Pinkston v. City of Albany*, 196 Ga. App. 43, 47 (395 SE2d 587) (1990). In fact, Brayman has not alleged that C. B. has been harmed by the county's enforcement of or implementation of an impermissible policy. Brayman's cause of action against the county rests solely upon the county's alleged "responsib[ility] for the acts, omissions, wilful indifference to consequences, and callous disregard of the consequences of its agents and employees." Inasmuch as governmental entities cannot be held vicariously liable for the actions of their employees, the trial court did not err in granting summary judgment in favor of the county on Brayman's 1983 claim.

We further agree with the trial court that Miller was likewise entitled to summary judgment on the 1983 claim. Brayman specifically alleged in her complaint that Miller, with knowledge of defendant

Deloach's conduct, "failed to properly investigate the problem with [C. B.], failed to control and prevent the continued harm to [C. B.] by Defendant Little and Defendant Deloach generally and generally exhibited an indifference to the consequences and callous disregard of the rights of [C. B.] and the harm being done to [C. B.]" On the contrary, the record indisputably shows that once Miller was informed of Deloach's sexual involvement with C. B., Deloach was immediately suspended, and two days later, discharge was recommended based upon the county's concern with the protection of the participants in its recreational programs. Moreover, there is no evidence that Miller was informed of Little's facilitation of communication between C. B. Assuming arguendo that Miller had failed to properly investigate the allegations made against Deloach, "even negligence in the performance of official duties, do[es] not warrant redress under 42 USC § 1983." (Citation and punctuation omitted.) *Forney v. Purvis*, 190 Ga. App. 192 (1) (378 SE2d 470) (1989). Accordingly, we must conclude that the trial court's grant of summary judgment in favor of Miller and Glynn County and partial summary judgment in favor of Little was proper.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED DECEMBER 2, 1993 —
RECONSIDERATION DENIED DECEMBER 17, 1993 — 

*Richard D. Phillips*, for appellant.
*Robert L. Russell III, W. Gary Moore*, for appellees.