S94A0235. FRANKLIN v. HILL.
(444 SE2d 778)

FLETCHER, Justice.

This case involves the constitutionality of the state statute that gives parents a cause of action for the seduction of their unmarried daughter. We hold that OCGA § 51-1-16 is a gender-based classification that violates the equal protection clause of the Georgia Constitution because only men may be civilly liable for seduction under the statute.

Nancy Franklin sued her daughter's former high school teacher, Andrew Hill, seeking damages for Hill's alleged seduction of the daughter under OCGA § 51-1-16.[1] In an earlier appeal, the Georgia

---

[1] The challenged statute provides:
   The seduction of a daughter, unmarried and living with her parent, whether followed by pregnancy or not, shall give a right of action to the father or to the mother if the father is dead, or absent permanently, or refuses to bring an action. No loss of services need be alleged or proved. The seduction is the gist of the action, and in well-defined cases exemplary damages shall be granted.

Court of Appeals held that Franklin could not pursue a cause of action on behalf of her daughter, but remanded the case for trial on Franklin's individual claim. *Franklin v. Hill*, 203 Ga. App. 724 (417 SE2d 721) (1992). Hill moved for summary judgment, challenging the constitutionality of the statute on equal protection grounds. The trial court declared the statute violated the equal protection clauses of the United States and Georgia constitutions and granted summary judgment. We affirm.

1. The protection of the equal protection clause in the State Constitution is similar to the protection provided in the Federal Constitution.[2] *Ambles v. State*, 259 Ga. 406, 407 (383 SE2d 555) (1989). To withstand constitutional challenge, a gender-based classification " 'must serve important governmental objectives and must be substantially related to achievement of those objectives.' " *Lamar v. State*, 243 Ga. 401 (254 SE2d 353) (1979) (quoting *Orr v. Orr*, 440 U. S. 268 (99 SC 1102, 59 LE2d 306) (1979)). Applying this standard, this court has held unconstitutional several state laws that created a gender classification in violation of the federal equal protection clause.[3] We have relied on the state's equal protection guarantee to invalidate a state statute that treated children differently based on the sex of their deceased parents. See *Tolbert v. Murrell*, 253 Ga. 566, 571 (322 SE2d 487) (1984) (finding wrongful death act violated equal protection by denying to children of deceased fathers rights granted to children of deceased mothers).

2. Hill argues that the seduction statute establishes a gender classification in three ways. First, only unmarried daughters, not sons, are protected from seduction; second, mothers are permitted to bring a seduction action only if the father is unable or unwilling to sue; and third, only men are liable for seduction. Because Hill limits his challenge to the third classification where his rights as a male are implicated, we do not address the constitutionality of the first two classifications.

---

OCGA § 51-1-16.

[2] The equal protection clause in the Georgia Constitution provides: "Protection to person and property is the paramount duty of government and shall be impartial and complete. No person shall be denied the equal protection of the laws." Ga. Const. of 1983, Art. I, Sec. I, Par. II.

[3] See *Stepperson, Inc. v. Long*, 256 Ga. 838, 839-840 (353 SE2d 461) (1987) (holding unconstitutional statute that gave a right of action to "a father or, if the father is dead, a mother" against persons furnishing alcoholic beverages to an underage child); *Ins. Co. of N. America v. Russell*, 246 Ga. 269, 271 (271 SE2d 178) (1980) (declaring unconstitutional a workers' compensation law that gave a conclusive presumption of dependency to widows, but not widowers); *Stitt v. Stitt*, 243 Ga. 301 (253 SE2d 764) (1979) (holding alimony statutes unconstitutional because they failed to allow alimony awards to husbands); *Sims v. Sims*, 243 Ga. 275, 276 (253 SE2d 762) (1979) (invalidating "live-in lover" bill that provided for modification of alimony of the wife, but not the husband).

In interpreting statutes, courts must look for the legislature's intent, "keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). All words, except words of art, shall be given their ordinary significance. *City of Roswell v. City of Atlanta*, 261 Ga. 657 (410 SE2d 28) (1991). "[W]here a constitutional provision or statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms." *Rayle EMC Corp. v. Cook*, 195 Ga. 734, 735 (25 SE2d 574) (1943).

Seduction is defined as the "[a]ct of man enticing woman to have unlawful intercourse with him by means of persuasion, solicitation, promises, bribes, or other means without employment of force." Black's Law Dictionary (5th ed. 1979), p. 1218. This court has defined "seduction" as a term substantially similar to "debauchery." *Mosley v. Lynn*, 172 Ga. 193, 201 (157 SE 450) (1930). " 'Seduction, as a civil injury, may generally be defined as the act of a man in inducing a virtuous woman to commit unlawful sexual intercourse with him.' " Id. at 201, 203 (quoting *Dwire v. Stearns*, 44 N.D. 190, 199 (172 NW 69)). Therefore, by definition the statute makes a gender classification in that only men may be liable for the seduction of unwed daughters. Cf. *Van Dyck v. Van Dyck*, 262 Ga. 720, 721 (425 SE2d 853) (1993) (holding that the plain language "with a person of the opposite sex" does not apply to a homosexual relationship).

3. A gender-based classification violates equal protection only if it fails to serve important government interests that are substantially related to those interests. The mother argues that the seduction statute advances the important state interests of "protect[ing] females from the emotional and physical consequences of non-marital sexual intercourse," including unwanted pregnancies and the physical and emotional scars of seduction.

Although preventing unwanted pregnancies, particularly of minors, is a legitimate government interest, the seduction statute is not substantially related to that goal. First, the statute has no age limitation, such as restricting the claim to parents of minor children. Second, the statute does not give the cause of action to the girl or woman who has the unwanted pregnancy and endured the "scars," but instead gives the right only to the parent. Third, the statute does not restrict the claim to parents whose daughters become pregnant, but extends the claim to seduction "whether followed by pregnancy or not." Finally, unlike the former criminal seduction statute, Ga. Code Ann. § 26-2005 (Harrison 1977) (enacted by Ga. L. 1968, p. 1299), which was aimed at preventing public injury by deterring behavior that offends the public morals, the civil seduction statute is aimed at compensating a father or mother for personal injuries suffered by the

daughter's seduction.[4]

Rather than seeking to prevent the pregnancy of unwed daughters, the statute was passed to hold men civilly liable for corrupting the morals and compromising the chastity of unmarried women. Passed in 1863 at a time when women and children were the legal property of their husbands or fathers, the statute vindicates the outraged feelings of the father whose daughter's virtue has been ruined. See *Mosley*, 172 Ga. at 199. As Justice Lumpkin explained:

> Never, so help me God, while I have the honor to occupy a seat upon this bench, will I consent to control the Jury, in the amount of compensation which they may see fit to render a father for the dishonor and disgrace thus cast upon his family; for this atrocious invasion of his household peace. There is nothing like it, since the entrance of Sin and Death into this lower world.

*Kendrick v. McCrary*, 11 Ga. 603, 606 (1852) (quoted with approval in *Mosley*, 172 Ga. at 200). Based on the language, history, and judicial interpretation of the seduction statute, we conclude it does not bear a substantial relationship to any important government objective.

We hold that the statute, which by definition applies only to men, violates the equal protection of laws and must be struck down as unconstitutional. We decline to amend it to extend liability to women. See *Waller v. State Constr. Indus. Licensing Bd.*, 250 Ga. 529, 531 (299 SE2d 554) (1983).

*Judgment affirmed. All the Justices concur, except Carley, J., who concurs in the judgment only.*

SEARS-COLLINS, Justice, concurring.

Although I concur in the majority's holding that OCGA § 51-1-16 violates equal protection, I write separately to urge a new method for reviewing the validity of statutes that focuses not on the application of traditional constitutional and interpretive principles but rather on what, in many cases, would be the less strained approach of examining whether the statute has become obsolete since its enactment. In this case, I believe that § 51-1-16, which was enacted in 1863, has become hopelessly obsolete in the last 131 years and therefore may not be enforced.

Obviously, courts should be reluctant to declare statutes void as

---

[4] Even if the statute were related to the deterrence of unwanted pregnancies, it is both underinclusive and overinclusive. For example, it does not cover the seduction of married women or any woman living in a household away from her parents, but does include single, divorced, and widowed women who are past child-bearing age.

obsolete. However, that power is justified in rare instances. Certainly, in this case, where the constitutionality of the statute is doubtful, where the statute is woefully out of step with current legal and societal standards, and where the statute has been rarely used, the court should not hesitate to declare the statute void so as to give our General Assembly the opportunity to reexamine the statute in its entirety. See Calabresi, *A Common Law for the Age of Statutes*, pp. 120-145 (1982); Sutherland Statutory Construction, § 23.25 (5th ed.); *Committee on Legal Ethics v. Printz*, 416 SE2d 720, 725 (W.Va. 1992);[5] R. Bork, The Tempting of America, 96 (New York: The Free Press 1990).[6]

Turning to § 51-1-16, we have held that it applies in cases in which the child

> is led astray and her morals destroyed, uprooted and extirpated, her social standing damaged, and she is thereby rendered an unfit associate for other children in the family and a debased member of society.

*Mosley v. Lynn*, 172 Ga. 193, 194 (1) (b) (157 SE 450) (1931). In discussing the damages due for the seduction, we have stated that it is the jury's duty to compensate the father

> for the dishonor and disgrace thus cast upon his family; for this atrocious invasion of his household peace. There is nothing like it, since the entrance of Sin and Death into this lower world. Money can not redress a parent who is wronged beyond the possibility of redress; can not minister to a mind thus diseased. Give to such a plaintiff all that figures can number, it is as the small dust of the balance. Say to the father, there is $1049, embrace your innocent daughter for the last time, and let her henceforth become an object for the hand of scorn to point its finger at. What mockery!

---

[5] In *Printz*, the court noted that the idea that courts can hold a statute void under these types of circumstances originated in Roman Law.
"Accordingly, it is absolutely right to accept the point that statutes may be repealed not only by vote of the legislature but also by the silent agreement of everyone expressed through desuetude."
*Printz* at 725, n. 3 (quoting from Book One of The Digest of Justinian 32).
[6] Professor Bork states that
[t]here is a problem with laws like these. They are kept in the code books as precatory statements, affirmations of moral principle. It is quite arguable that this is an improper use of law, most particularly of criminal law, that statutes should not be on the books if no one intends to enforce them. It has been suggested that if anyone tried to enforce a law that had moldered in disuse for many years, the statute should be declared void by reason of desuetude.
R. Bork at 96.

*Mosley*, 172 Ga. at 200 (quoting *Kendrick v. McCrary*, 11 Ga. 603, 606 (1852)). Further, the rationale in placing the action in the father, or the mother if the father is dead or permanently absent, is that

> [b]efore the child attains the age of twenty-one, the law gives the father dominion over her; and after [age 21], the law presumes the contract, when the daughter is so situated as to render service to the father,[7] or is under his control; and this it does for the wisest and most benevolent of purposes, to preserve his domestic peace, by guarding from the spoiler the purity and innocence of his child.

*Kendrick*, 11 Ga. at 604.

The foregoing demonstrates that the statute is based on outdated notions of a parent having dominion and control of his or her daughter, including an adult daughter, and in fact harkens back to times when parents, particularly fathers, had property interests in the bodies of their children. See Larson, "Women Understand So Little, They Call My Good Nature 'Deceit' ": A Feminist Rethinking of Seduction, 93 Columbia L. Rev. 374, 382 (1993). The statute carries the unacceptable implication that a parent "owns" a daughter and that if the parent's "goods" are damaged, the "owner" should be compensated. Moreover, the statute even applies to adult daughters who are living at home. Certainly, today, an adult daughter who is living at home is not under the dominion and control of her father, and if she has a consensual sexual relationship, it does not bring the " 'dishonor and disgrace,' " *Mosley*, 172 Ga. at 200, upon her parents that it might have brought in 1863. By perpetuating the idea that an adult daughter who lives at home is under the control of her parents and the idea that, when she engages in a consensual sexual relationship, that relationship immeasurably damages her parents, the statute fails to recognize the long sought after freedom and independence which has been achieved by women.

Further, the statute runs contrary to modern notions that actions should be brought in the name of the real party in interest. See OCGA § 9-11-17. If the seduction of a daughter truly creates harm, then it clearly harms the daughter, who then should be the party having the right of action.[8] Many states have reformed their seduction statutes to account for this reality, but Georgia has not. See Larson at 386; Prosser & Keeton on Torts, § 124, p. 928 (5th ed. 1984).

---

[7] Although it is no longer necessary to prove a loss of service, see *Mosley*, 172 Ga. at 198, the remainder of the quotation from *Kendrick* remains valid.

[8] The woman's consent to the sexual relationship, if not vitiated by fraud or force, would be a defense to the woman's action for seduction. See Larson at 386-387.

Further, the statute does not fit within the framework of current constitutional law because it discriminates against the parents of male children by only providing a cause of action for the seduction of a daughter, and because it gives preferential treatment to fathers by permitting them, if they are living and present, to bring the action to the exclusion of mothers. Such gender-based classifications are out of touch with today's constitutional standards. See, e.g., *Stepperson v. Long*, 256 Ga. 838, 839-840 (1) (353 SE2d 461) (1987) (holding that a statute that gave a cause of action to a father or, if the father was dead, to the mother, was unconstitutional). See also Prosser & Keeton on Torts, § 124 at 926, 928 (stating that if an action for seduction is to be maintained, it should lie for the seduction of a male child and should not give the father preference to bring the action). However, even if § 51-1-16 were revised or interpreted to permit either parent of a seduced male to bring an action, the statute would nonetheless still suffer from the anachronisms and obsolescence outlined in the preceding two paragraphs of this concurrence.

The final factor in deciding that the statute should be declared obsolete is that the statute has largely fallen into disuse. Indeed, the statute has seen negligible use since its enactment in 1863, and since 1932, see *Odum v. Bergman*, 45 Ga. App. 180 (163 SE 916) (1932), the only reported cases of its use are the present case and *Brayman v. Deloach*, 211 Ga. App. 489 (1) (439 SE2d 709) (1993). Although disuse might not be a decisive factor in holding this, or any, statute obsolete, the fact that the statute has seldom been used in 131 years and not at all in about 60 years sends a signal that the statute is not being relied on by the general public and is thus a factor to consider in determining whether to force a reconsideration of the law by the people's representatives.

Because § 51-1-16 is based on outdated legal and societal notions and has a significant history of disuse, the statute should be repealed as being obsolete, thus forcing the General Assembly to reexamine the tort of seduction in view of modern day concepts. Thus, in addition to the reasons given in the majority opinion, I would affirm the trial court's judgment on the ground that the statute is obsolete.

DECIDED JUNE 27, 1994.

*Weinstock & Scavo, Michael Weinstock, Richard J. Capriola, Hillard J. Quint*, for appellant.

*Harben & Hartley, Phillip L. Hartley, Martha M. Pearson, E. Victoria Sweeney, John E. Mahan*, for appellee.