## A99A2450. WOODWARD v. GRAY et al.
### (527 SE2d 595)

ELDRIDGE, Judge.

Rosaline Ogletree Woodward sued Officer Elaine Gray and her employer, Columbus, Georgia, for arresting her without probable cause for disorderly conduct, giving rise to claims under OCGA §§ 51-7-1, 51-7-20, 51-7-22, 51-7-40 and 51-7-41, assault and battery, and 42 USC § 1983. Woodward's alleged disorderly conduct consisted of standing eight feet from Officer Gray in the street across from her mother's home for several minutes and yelling in a loud voice that Gray was harassing people without reason when she arrested her brothers and put them in handcuffs; Woodward refused to leave the area on command by Officer Gray as obstruction of Gray's performance of her duty and Woodward argued with Officer Gray over leaving, because it was her mother's house. Specifically, Woodward yelled loudly in front of a crowd "that was her brother [being arrested]; that she didn't have to go any fucking where"; "you can't tell me what to do[; t]his is public property[;] I pay your fucking salary[; y]ou don't have to, and the hell with you[; t]his is public property[;] I don't have to leave this street[;] I can come over here and find out what's going on."

Being obnoxious, loud, arguing with the police, and refusing to move more than eight feet from the police on command where such distance does not interfere with the performance of police duties does not constitute probable cause to believe that disorderly conduct has occurred. Conduct that does not rise to actual interference or obstructing a police officer does not constitute disorderly conduct under the Columbus ordinance, although the Columbus Police Department uses such facts and circumstances as a lesser violation for less blatant conduct for arguing with the police or refusing to obey an officer.

However, as misguided as such interpretation of the law is, the

arrest under the facts of this case did not give rise to a civil cause of action for damages, either under Georgia or federal law. The Columbus ordinance, § 14-62.2 (a), reads in pertinent part:

A person may be charged with, and convicted of, the offense of disorderly conduct when such person commits any of the following acts: (1) Performs an unlawful act of violence or performs any other act in such a violent and tumultuous manner that the public peace and tranquility [are] disturbed; (2) Verbally or physically harasses, menaces, or intimidates a person to the disturbance of the public peace; . . . (5) Without provocation, uses to, or of another, in that person's presence, opprobrious, abusive, or obscene words which, by their very utterance[,] tend to incite a person to an immediate breach of the peace.

A drug sting operation in a high drug traffic area of Columbus was set in motion without adequate planning, coordination, communications, and control being incorporated into the plan, because there was no signal or method of communication by which the undercover officer could indicate to the backup officers that a sale or attempted purchase had occurred, instead of an innocent citizen contact with the officer. Officer Lighting, security guard at Carver High School, acted as a decoy, but Bradley Ogletree, a teacher and coach at Carver High who was on his way to see his sick mother around the corner, stopped to speak to Lighting and shook his hand. Officer Joe Goodwin, another undercover officer, saw the physical contact but observed no exchange of money or drugs. Nevertheless, Goodwin erroneously alerted the two backup units to stop the black Cherokee that Ogletree was driving for a drug transaction. Without even a reasonable, articulable suspicion, Officer Gray and three other officers went after Ogletree, who by this time had parked at his mother's house and gotten out of the black Cherokee. Brinson Ogletree came out of the mother's house and approached his brother at the sports utility vehicle. Two officers seized Brad Ogletree and handcuffed him, while Officer Gray and another officer approached Brinson Ogletree, demanding that he put his hands on the vehicle while he was given a pat-down search, although he had not been in the SUV. Brinson Ogletree, with justification, loudly protested and argued with the officer that he had done nothing and was being harassed. Officer Gray approached him from the rear and used the rubber-covered aerial of her radio to touch/hit him on the shoulder to get his attention, telling him to calm down and to cooperate. When he quickly turned toward her in response and angrily told her not to do that again, she had him handcuffed and arrested for disorderly conduct, i.e., arguing with a Columbus police officer and failing to coop-

erate, claiming that such conduct had been threatening to her. This was when the Ogletree sisters came to see what was happening. One followed Officer Gray's command and left to call a superior officer. Woodward, however, argued with Officer Gray and refused to retreat from Gray; Officer Gray arrested Woodward for disorderly conduct.

The trial court granted the defendants' motion for summary judgment. Reluctantly, we must affirm.

(a) An act directly tending to interfere with, interpose obstacles or impediments, hinder, impede, interrupt in any manner, or prevent or pervert the public administration of justice constitutes obstruction of the police in performing their lawful duty. See OCGA § 16-10-24; *Baker v. State*, 122 Ga. App. 587, 588-589 (1), (4) (178 SE2d 278) (1970). A police officer, however, is not discharging his or her lawful duty when she makes an arrest of an individual without reasonable and probable cause or stops an individual without specific articulable suspicion; in this case, neither of plaintiff's brothers' arrests was based upon probable cause. *Wynn v. State*, 236 Ga. App. 98, 99 (2) (511 SE2d 201) (1999); *Brown v. State*, 163 Ga. App. 209, 212 (4) (294 SE2d 305) (1982). Furthermore, to argue with, curse loudly at, to verbally interrupt a police officer while making the arrest of another does not constitute obstruction of a police officer. See *Moccia v. State*, 174 Ga. App. 764 (331 SE2d 99) (1985); see also *Statham v. State*, 41 Ga. 507, 513 (3) (1871); *McCook v. State*, 145 Ga. App. 3, 5 (2) (243 SE2d 289) (1978). To obstruct, resist, or oppose for purposes of obstructing an officer implies forcible resistance and does not mean the refusal to merely obey the police officer's command to move more than eight feet from where the arrest was being made so that the police could perform their duties unimpeded. *Whaley v. State*, 175 Ga. App. 493, 494 (333 SE2d 691) (1985); *Moses v. State*, 6 Ga. App. 251, 253 (2) (64 SE 699) (1909); see also *Vince v. State*, 113 Ga. 1070, 1071 (39 SE 435) (1901); *Chaplin v. State*, 141 Ga. App. 788, 790 (2) (234 SE2d 330) (1977).

For speech to rise to the level of obstruction, it must be reasonably interpreted to be a threat of violence to the officer, which would amount to obstruction or hindrance. *Dumas v. State*, 159 Ga. App. 517, 518-519 (284 SE2d 33) (1981); *Evans v. State*, 154 Ga. App. 381 (268 SE2d 429) (1980). Lying or intentionally misleading an officer in the lawful discharge of his duty can also constitute verbal obstruction. *Duke v. State*, 205 Ga. App. 689 (423 SE2d 427) (1992).[1] Warn-

---

[1] Cf. "Even verbal exchanges may satisfy that element [of obstruction]." *Leckie v. State*, 231 Ga. App. 760, 761 (500 SE2d 627) (1998); see also *Stepherson v. State*, 225 Ga. App. 219, 221 (3) (483 SE2d 631) (1997). Both cases give dicta that verbal exchanges can constitute obstruction, but cite as authority for this *Duke v. State*, supra at 690, which holds, instead, that lying to the police can constitute obstruction. In these cases, the basis for obstruction was physical resistance to an arrest for disorderly conduct.

ing the subject of an investigation or inciting others to interfere and to hinder an investigation can constitute verbal obstruction. However, none of these acts occurred in this case.

In this case, Woodward made no threat of violence, nor did she lie to Officer Gray. No obstruction, therefore, occurred either under State law or the Columbus ordinance. The policy or practices of the Columbus Police Department to treat verbal abuse and argument with an officer that does not physically interfere with or use words intended to incite others to physically interfere with the lawful exercise of police duties and refusal to move from an area more than eight feet from an arrest or crime scene perimeter does not constitute obstruction and cannot be treated as disorderly conduct under the circumstances of this case.[2]

Police can create a reasonable crime scene perimeter, put up a crime scene tape to avoid destruction or tampering with evidence, or exclude the public from a reasonable physical zone of an arrest within which there is a risk of physical contact between the officer, suspect, and public or a passing of weapons or evidence. However, a command to clear the general area entirely beyond the zone of police operations constitutes an overly broad and unreasonable demand that exceeds reasonable law enforcement procedure and needs.

(b) Disorderly conduct may arise from various conduct both under State statute and local ordinance, i.e., a threat of violence toward a person or property, use of "fighting words," or the use of obscene, vulgar, or profane language in the presence of someone under 14. OCGA § 16-11-39. "Language is obscene, vulgar or profane when, under the circumstances and manner in which such utterance was made, it would clearly offend a reasonable person's sense of decency." *Breaux v. State*, 230 Ga. 506, 508 (1) (197 SE2d 695) (1973); *Grantham v. State*, 151 Ga. App. 707, 708 (3) (261 SE2d 445) (1979), aff'd, 244 Ga. 775 (262 SE2d 777) (1979).

For the use of obscene words to constitute a disturbance of the peace, it must be made in the presence of a member of the "public" and not merely a police officer. Thus, an obscenity heard by Officer Gray and other officers but not heard by the public would not have disturbed "the public or some member thereof," who must be disturbed in their peace and tranquility. See *Wood v. Haynes*, 148 Ga. App. 640, 641-642 (2) (252 SE2d 69) (1979).

The language directed at Officer Gray did not constitute "fighting words," i.e., "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New*

---

[2] Cf. *Bennett v. City of Dalton*, 69 Ga. App. 438 (25 SE2d 726) (1943). In that case, the defendants twice refused to move from a crowd where their loud and boisterous complaints were the center of attention. However, the disorderly conduct consisted of causing the disturbance of the peace among the public that made up the crowd.

*Hampshire,* 315 U. S. 568, 572 (62 SC 766, 86 LE 1031) (1942); *Anderson v. State,* 231 Ga. App. 807 (499 SE2d 717) (1998); *Bolden v. State,* 148 Ga. App. 315, 316 (2) (251 SE2d 165) (1978). Fighting words, when uttered to provoke another, fall outside of constitutional protection. *Bose Corp. v. Consumers Union &c.,* 466 U. S. 485, 504-505 (104 SC 1949, 80 LE2d 502) (1984). A police officer may be the victim of fighting words, i.e., "son of a bitch," "motherfucker," "bastard," "bitch," "motherfucking pig," or "pig." *Bolden v. State,* supra at 316. "Fighting words" for purposes of statutory prohibition should be viewed with regard to the factual circumstances of their utterance. *State v. Klinakis,* 206 Ga. App. 318, 319-323 (1) (425 SE2d 665) (1992). In this case, however, plaintiff called Officer Gray no derogatory names but merely accused her of harassing her brothers without just reason, which in fact was the case. There existed no provocation in plaintiff's conduct that would breach the peace; she did not seek to incite family and neighbors against the police.

"Disorderly conduct" means some act or conduct which tends to breach the peace or at least disturb that portion of the public which may see or hear the conduct claimed to have been disorderly. See *Johnson v. State,* 111 Ga. App. 298 (141 SE2d 574) (1965). Under none of the provisions of the Columbus ordinance does plaintiff's conduct constitute disorderly conduct. Therefore, the arrests on such charge have been employed by the Columbus Police Department as a means to control anyone who argues with them or who refuses to follow their orders to leave an area. Under the circumstances presented here, such conduct exceeded the lawful authority of the police.

(c) Under official immunity, however, Officer Gray has immunity from suit for the discretionary act of arresting the plaintiff for disorderly conduct for arguing with her and failing to obey her command.[3] Actual malice toward plaintiff must be shown, not mere anger, frustration, or irritation, to constitute an exception to official immunity. Here, the evidence does not give even an inference of actual malice, much less proof of it.[4] The combined city-county government is protected by sovereign immunity, because there has been no statutory

---

[3] Art. I, Sec. II, Par. IX, of the 1983 Const. of Ga.; *Merrow v. Hawkins,* 266 Ga. 390 (1) (467 SE2d 336) (1996).

[4] "[A]ctual malice" . . . denote[s] "express malice or malice in fact." Express or actual malice, although not a term typically used in the context of civil litigation, see, e.g., OCGA § 51-7-2, is found in criminal law and has long been distinguished from "implied malice," a term which has been defined to mean conduct exhibiting a "reckless disregard for human life."
(Citations omitted.) Id. at 392 (2). While the evidence, when given the most favorable inference, demonstrates frustration, irritation, and possibly even anger, such evidence falls below the legal standard for actual malice, because Officer Gray and the other Columbus police officers mistakenly believed that they could make arrests for disorderly conduct when a person argued with them and refused to obey their command.

waiver of sovereign immunity.[5]

Finally, no 42 USC § 1983 action for damages can lie against either defendant, because the doctrine of qualified immunity applies where the "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (Citations and punctuation omitted.) *Leeks v. Cunningham*, 997 F2d 1330, 1333 (11th Cir. 1993). See also *Harlow v. Fitzgerald*, 457 U. S. 800, 818 (102 SC 2727, 73 LE2d 396) (1982). Henceforth, however, the practice of arresting for disorderly conduct for simply arguing with an officer and refusing to obey a command to move out of an area that is already more than eight feet away from an arrest that reasonably cannot hinder the performance of police duties may be impermissible in the face of this opinion as " 'deliberate indifference' to the rights of persons with whom the police come into contact" from inadequate training. *Collins v. City of Harker Heights, Texas*, 503 U. S. 115, 123-124 (112 SC 1061, 117 LE2d 261) (1992); *Bell v. City of Albany*, 210 Ga. App. 371, 373 (436 SE2d 87) (1993); see also *Watson v. Mayor &c. of Savannah*, 223 Ga. App. 399, 401-402 (477 SE2d 667) (1996); *Brayman v. Deloach*, 211 Ga. App. 489, 492 (439 SE2d 709) (1993).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JANUARY 6, 2000 —
RECONSIDERATION DENIED JANUARY 19, 2000 —

*Agnew, Schlam & Bennett, G. Michael Agnew*, for appellant.
*Clifton C. Fay*, for appellees.

---

[5] *Seay v. Cleveland*, 270 Ga. 64, 65 (1) (508 SE2d 159) (1998); *Gilbert v. Richardson*, 264 Ga. 744 (452 SE2d 476) (1994); *Bowen v. Columbus, Ga.*, 256 Ga. 462, 463 (349 SE2d 740) (1986).