## A02A0828. TITTLE et al. v. CORSO et al.
(569 SE2d 873)

PHIPPS, Judge.

Russell Tittle and his wife sued Gwinnett County Deputy Sheriff Paul Corso and the Gwinnett County Sheriff's Department, alleging a variety of torts. The trial court granted Corso's motion for summary judgment on the ground that he was entitled to official immunity from suit. The court also denied the Tittles' motion to substitute the sheriff, in his official capacity, for the sheriff's department. The Tittles appeal both rulings. We affirm because there is no evidence that

---

Corso acted with actual malice and the sheriff was entitled to sovereign immunity.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] We review a grant of summary judgment de novo and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

Viewed in this light, the evidence shows that at about 1:00 a.m. on October 6, 1999, Corso was watching television at home, having just finished his shift with the sheriff's department. He heard six to eight "loud popping noises" outside that he believed were gunshots. He looked out the window and saw a car with its emergency lights on, and he heard a broadcast over the police radio that shots had been fired and officers should "check the neighborhood." Corso decided to respond to the call because "[i]t was so close to my house I was worried about it."

Meanwhile, Tittle was driving his wife and two children home. The car began to backfire repeatedly, and Tittle switched to "back roads" because he was afraid that "[s]omebody's going to think we're out here shooting or something." A short while later, the muffler exploded and caught fire, and the car shut off entirely. Tittle exited the car and began "kicking the muffler around" with half of his body under the car.

Corso pulled up in his patrol car, stopped near Tittle, and shone the patrol car's spotlight and headlights onto Tittle. Corso approached Tittle with his gun drawn and told him to stand, put his hands in the air, and walk backward toward him. Tittle complied. Corso then ordered him to lie face down, placed a gun against his neck, and introduced himself. Corso searched him for weapons and found none. Corso testified that he had Tittle lie down because he had no handcuffs with him, and Tittle admitted that Corso did not hurt him.

While Tittle was lying down, his wife got out of the car and asked what was going on. Corso told her to get back in the car and that he would "explain it in a minute." Then Corso had Tittle sit down cross-legged while he went to his patrol car to use the radio. Tittle tried to explain that he was having muffler trouble, but Corso told him, "Shut up. I'm in control." According to Tittle, however, Corso "dispatched and told them that I was having car trouble." Corso also requested backup.

Next, Corso helped Tittle to his feet and walked him over to the

[1] OCGA § 9-11-56 (c).

[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

patrol car. Tittle testified that Corso did this not in a hurtful manner, but "just like any officer would." Although Tittle testified that he was "scared," he again denied that Corso hurt him. According to Tittle, Corso then "slammed me down on the hood and [said], 'If you fucking move, I'll put my dog on you, and he'll eat you up.'" Corso also told Tittle that "if I fucking moved, he'd blow my head off" and that more officers would arrive and would "treat you worse than I did."

Corso left Tittle leaning over the hood of the patrol car, walked over to Tittle's car, and asked his wife if there were any guns in the car. She said no, and Corso asked her to get out of the car. He then promised not to hurt the children, one of whom was sleeping, and leaned into the car and asked if there was a gun inside. The child who was awake "shook his head no."

The backup officers arrived and ascertained that Tittle's license check was clean and that no weapons were present. After offering the Tittles assistance, the officers permitted them to leave in their car.

Corso denies putting a gun to Tittle's head or slamming him against the hood of his patrol car. He also maintains that Tittle did not initially tell him about the broken muffler. He further asserts that he never threatened to blow Tittle's head off and that he did not use the expletive "fucking" during his confrontation with the Tittles.

Tittle sued Corso, alleging false imprisonment, aggravated assault, battery, intentional infliction of emotional distress, and trespass. Tittle's wife also sued Corso, alleging intentional infliction of emotional distress and trespass. Finally, the Tittles sued the Gwinnett County Sheriff's Department under a theory of respondeat superior. The trial court denied the Tittles' motion to substitute the sheriff, in his official capacity, as Corso's employer, ruling that the sheriff would be entitled to the defense of sovereign immunity, which had not been waived by the county. The trial court also granted Corso's motion for summary judgment on the grounds that he was entitled to official immunity.

1. The Tittles argue that the trial court erred in granting summary judgment to Corso because genuine issues of material fact exist as to whether his actions demonstrated actual malice. We cannot agree.

Corso was acting within the scope of his authority and performing an official discretionary function in investigating a "shots fired" call.[3] Thus, he is entitled to official immunity from the Tittles' claims,

---

[3] See *Gardner v. Rogers*, 224 Ga. App. 165 (480 SE2d 217) (1996) (deputy sheriff dispatched to investigate an alleged assault is performing discretionary duties). A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. *Todd v. Kelly*, 244 Ga. App. 404, 406 (1) (535 SE2d 540) (2000).

absent a showing that he acted with actual malice or intent to cause injury.[4] The Tittles do not contend that Corso intended to injure them. They argue instead that his actions demonstrated actual malice. Actual malice, in the context of official immunity, means a deliberate intention to commit a wrongful or illegal act.[5]

The Tittles concede that Corso's actions up to the point of radioing for backup do not show any actual malice. They argue, however, that Corso's subsequent use of unnecessary profanity and force do show actual malice because, at that point, Corso knew that Tittle was unarmed and merely had a problem with his muffler. Although we in no way condone Corso's behavior, as described by the Tittles, we must conclude that, as a matter of law, it does not rise to the level of actual malice.

Tittle testified that after making the radio call, Corso helped him to his feet "just like any officer would" and escorted him to the patrol car. Although Corso still held his gun in his left hand, the Tittles did not testify — contrary to assertions in their brief — that Corso again placed the gun against Tittle's neck. Tittle did testify that Corso threatened to shoot him or unleash his dog on him if he moved. In addition, Tittle testified that Corso "slammed" him against the patrol car. Thus, the actions alleged to constitute actual malice include the use of profanity, threats, and "slamming."

Although profanity may be distasteful and insulting, we cannot conclude that it shows actual malice, particularly in the absence of any epithets or other words indicating any personal bias. As we noted in *Woodward v. Gray*,[6] evidence demonstrating "frustration, irritation, and possibly even anger" is not sufficient to penetrate official immunity.

Nor are Corso's alleged threats sufficient to establish actual malice. Corso said that he would injure Tittle *if he moved*. Thus, the threats were intended, on their face, to prevent Tittle from presenting a danger while Corso investigated his car, which might have contained weapons or other dangers. While it is true that Corso knew by then that Tittle was unarmed, we find no actual malice in Corso's expressed desire that Tittle remain immobile while Corso's attention was directed elsewhere. We are not prepared to say that an unarmed man cannot be dangerous, particularly to a lone officer in the middle of the night. The Tittles point out that the better course would have been for Corso to retrieve his handcuffs from the patrol car and restrain Tittle or place him inside the patrol car. But our task is not

---

[4] Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d); see *Todd*, supra.

[5] *Adams v. Hazelwood*, 271 Ga. 414, 415 (2) (520 SE2d 896) (1999); *Merrow v. Hawkins*, 266 Ga. 390, 391-392 (2) (467 SE2d 336) (1996).

[6] 241 Ga. App. 847, 851, n. 4 (527 SE2d 595) (2000).

to decide, with the benefit of hindsight, what Corso should have done. We are concerned only with whether his behavior showed a deliberate intention to commit a wrongful act. Under the circumstances alleged by the Tittles, we find that Corso's threats evidence no such intention.

Finally, Corso's placement of Tittle against the hood of the police car does not show actual malice. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."[7] Even accepting Tittle's characterization of Corso's action as "slamming," that act — without more — does not show that Corso's use of physical force was so excessive or unnecessary as to demonstrate a deliberate intent to do wrong.

We reiterate that we do not condone Corso's alleged behavior. Tittle's testimony that Corso "scared" him is understandable. But we cannot conclude that Corso's profanity, threats, and "slamming" showed a deliberate intent to commit a wrongful act, as opposed to an effort to restrain Tittle while Corso continued to investigate and secure the scene. The trial court properly granted Corso's motion for summary judgment on the basis of official immunity.[8]

2. The Tittles also argue that the trial court erred in denying their motion to add the sheriff, in his official capacity, as a defendant. Having been sued in his official capacity, the sheriff can claim the defense of sovereign immunity to the extent there was no waiver.[9] The Tittles contend sovereign immunity was waived pursuant to OCGA § 33-24-51 (b), which provides,

> Whenever a municipal corporation, a county, or any other political subdivision of this state shall purchase the insurance authorized by subsection (a) of this Code section to provide liability coverage for the negligence of any duly authorized officer, agent, servant, attorney, or employee in the

---

[7] (Citation omitted.) *Graham v. Connor*, 490 U. S. 386, 396 (109 SC 1865, 104 LE2d 443) (1989). These additional words from the *Graham* Court, while not directly applicable because that case involved alleged violations of federal constitutional law rather than state tort law, are nonetheless instructive:

Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

(Citation and punctuation omitted.) Id. at 396-397.

[8] See *Woodward*, supra.

[9] See *Stone v. Taylor*, 233 Ga. App. 886, 887 (1) (506 SE2d 161) (1998); *Coffey v. Brooks County*, 231 Ga. App. 886, 892-893 (2) (e) (500 SE2d 341) (1998), rev'd on other grounds, *Rowe v. Coffey*, 270 Ga. 715-716 (515 SE2d 375) (1999).

performance of his official duties, its governmental immunity shall be waived to the extent of the amount of insurance so purchased. . . .

OCGA § 33-24-51 (a) limits the immunity waiver to insurance covering liability "arising by reason of ownership, maintenance, operation, or *use* of any motor vehicle by the . . . county."[10] Whether an event arises from the "use" of a motor vehicle depends on the circumstances of the case.[11]

> [P]rocurement of insurance under this statute does not constitute a waiver of sovereign immunity in regard to damages caused by the county's negligence *not* connected with motor vehicles. This point addresses the issue of causation in relation to a county's liability for the negligent use of a motor vehicle. In that regard, the plaintiff in this tort action, as in any tort action, must prove causation and damages. With respect to causation, to recover damages in a tort action, a plaintiff must prove that the defendant's action [misuse of a county vehicle] was both the cause in fact and the proximate cause of [the] injury.[12]

The Tittles argue that their injury arose from Corso's use of the patrol car because the headlights and spotlight were used to illuminate the area and because Corso placed Tittle against the hood of the car. But even assuming, without deciding, that OCGA § 33-24-51 is applicable in this case, where negligence was not alleged, we find that the patrol car was only remotely related to Corso's alleged tortious conduct and that the Tittles' injuries were not caused by Corso's "use" of the patrol car, as contemplated by that Code section.[13]

Having shown no waiver of sovereign immunity, the Tittles have failed to show that the sheriff might have been liable under the doctrine of respondeat superior for any alleged actions of Corso.

*Judgment affirmed. Andrews, P. J., Johnson, P. J., and Smith, P. J., concur. Blackburn, C. J., Miller and Mikell, JJ., dissent.*

MIKELL, Judge, dissenting.

I respectfully dissent to Division 1 of the majority opinion as I find a genuine issue of material fact remains as to whether Corso acted with actual malice.

---

[10] (Emphasis supplied.)

[11] *Harry v. Glynn County*, 269 Ga. 503, 504 (1) (501 SE2d 196) (1998).

[12] (Citations and punctuation omitted; emphasis in original.) *Lincoln County v. Edmond*, 231 Ga. App. 871, 873 (1) (501 SE2d 38) (1998).

[13] See id.

Summary judgment is properly granted where the evidence, including the pleadings and depositions, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[14] The respondent should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion.[15]

During his deposition, Russell Tittle testified that when Corso lifted him up, he was scared, "because he told me if I fucking moved, he'd blow my head off." Tittle further deposed that when he tried to explain to Corso about the muffler, Corso said, "Shut up. I'm in control." According to Tittle, after Corso finished using the radio, he grabbed Tittle, picked him up, walked him over to the police car, slammed him down on the hood, and said, "If you fucking move, I'll put my dog on you, and he'll eat you up." He also said, "There's going to be more officers here, . . . and they're going to treat you worse than I did." Two officers arrived, and Tittle testified that he overheard Corso comment that he had not brought his dog. "So all this time I'm thinking he was going to have his dog eat me up, and he never even had a dog," Tittle deposed.

Actual malice, in the context of official immunity, is defined simply as a "deliberate intention to do wrong."[16] It has long been held in criminal law that the intention with which an act is done is peculiarly a matter for the jury to decide.[17] In the case at bar, the evidence, when construed most favorably to the Tittles, permits an inference that Corso acted with malice.[18] I believe that actual malice can be inferred from the use of profane, opprobrious language, particularly when coupled with threats, a display of force, and a drawn weapon. In the final analysis, it is for a jury, not an appellate court, to weigh the evidence in this case and determine whether Corso "deliberately intended to do wrong." Accordingly, I would reverse the grant of summary judgment to Corso.

I am authorized to state that Chief Judge Blackburn and Judge Miller join in this dissent.

DECIDED JULY 9, 2002 —
RECONSIDERATION DENIED JULY 31, 2002 ▮▮▮▮▮▮▮

---

[14] OCGA § 9-11-56 (c).

[15] *Bakhtiarnejad v. Cox Enterprises*, 247 Ga. App. 205, 209 (1) (541 SE2d 33) (2000).

[16] (Citation and punctuation omitted.) *Adams v. Hazelwood*, 271 Ga. 414, 415 (2) (520 SE2d 896) (1999).

[17] *Climpson v. State*, 253 Ga. App. 485, 486 (1) (559 SE2d 495) (2002).

[18] Cf. *Woodward v. Gray*, 241 Ga. App. 847, 851 (c) (527 SE2d 595) (2000).

*Larry E. Stewart*, for appellants.
*Kristina H. Blum*, for appellees.