**THIRD DIVISION
ELLINGTON, P. J.,
DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 7, 2015**

# In the Court of Appeals of Georgia

A15A0711. TUGGLE V. ROSE et al.

MCFADDEN, Judge.

Harriet Tuggle, a teacher at a Fulton County middle school, appeals the denial of her motion for summary judgment on official immunity grounds in this assault-and-battery action brought by a former student, P. R., and his parents. Tuggle argues that because the plaintiffs have presented insufficient evidence to rebut her direct evidence of a lack of malice, she was immune from suit and entitled to summary judgment. We agree and therefore reverse.

1. *Factual background.*

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. On appeal, we review a trial court's grant of summary

> judgment de novo, construing the evidence and all inferences drawn
> from it in a light favorable to the nonmovant.

*Griswold v. Collins*, 318 Ga. App. 556 (734 SE2d 425) (2012) (citation omitted).

Viewed most favorably to the plaintiffs, the evidence shows that, in 2012, P. R. was a student in a seventh-grade language arts class taught by Tuggle. In February 2012, P. R. asked Tuggle a question about a project he was working on. Tuggle answered him and he returned to his seat. P. R. approached Tuggle again, while she was checking work at another student's desk, because P. R. felt she had not answered his question. Tuggle became angry and said, "Oh, my God, child. Just follow me." She grabbed P. R. and put him in a "headlock": she extended her arm all the way around his neck, resting her hand on the back of his neck, so that his head was under her arm. Tuggle walked P. R. around the room as she continued to go desk by desk, checking the work of other students. P. R.'s head was in front of Tuggle's body, his body was behind, and he was forced to hunch over as she walked him through the rows of desks. Initially, Tuggle's grip was pretty loose, but it became tighter as they walked between the rows of desks, until it became "pretty tight." It did not become so tight that Tuggle pulled P. R. over.

When she grabbed him, Tuggle handed P. R. his clipboard with his paper and told him to work. P. R. tried to complete his homework for the next day, but he could only hold the clipboard in front of him with one hand and read the assignment. Accoding to P. R., Tuggle let him go when she was "finished" and he walked back to his seat. He did not have any way of knowing how long she held him because he did not look at a clock, but it "felt like forever." Afterwards, P. R.'s neck felt "a bit weird."

Tuggle described the interaction as her putting her arm around P. R. because she did not want him to leave her presence until she could answer his question. She testified that she held P. R. less than 30 seconds. She denied intending to embarrass P. R. or to hurt him.

Tuggle moved for summary judgment on the ground that she was entitled to official immunity. The trial court conducted a hearing, at which Tuggle re-asserted an objection she had made in her reply to the plaintiff's brief in opposition to summary judgment. Specifically, Tuggle objected on hearsay grounds to the plaintiffs' reliance on summaries of statements from P. R.'s classmates that were included in an investigative report prepared by a school district investigator. At the hearing, she also objected to the consideration of P. R.'s affidavit testimony that the

incident lasted 20 minutes, arguing that the affidavit testimony contradicted his deposition testimony on the issue. The trial court denied the motion for summary judgment but did not specifically address these objections.

2. *Evidentiary objections*.

Tuggle re-asserts the evidentiary challenges she raised in the trial court. The plaintiffs rely on that evidence to show the duration of the headlock, which, they claim, is circumstantial evidence of Tuggle's malice. We agree with Tuggle that neither piece of evidence is admissible to show the duration of the encounter.

In his affidavit, P. R. testified that Tuggle restrained him for approximately 20 minutes. In his deposition, he testified that he did not have any way of knowing how long she held him because he did not look at a clock, but it "felt like forever." "It is well established that on summary judgment a party's self-contradictory testimony, if unexplained, must be construed against the party-witness, even when the party-witness is the respondent rather than the movant. *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986)." *Walker v. Brannan*, 243 Ga. App. 235, 237 (533 SE2d 129) (2000). P. R.'s affidavit testimony that the headlock lasted 20 minutes contradicts his deposition testimony that he did not have any way of knowing how long Tuggle held him, and he has not offered any

reasonable explanation for the contradiction. See *Prophecy*, supra, 256 Ga. at 30 (2). Therefore, we must construe his testimony against him and reject his testimony that the headlock lasted 20 minutes.

The plaintiffs rely on the statement of another student to support the contention that Tuggle restrained P. R. for 20 minutes. The school district investigator prepared a report about the incident, which included summaries of statements made by P. R.'s classmates. The report was attached to the investigator's affidavit, which Tuggle filed with her motion for summary judgment. In the summary of the statement of one of the students, the investigator reported that the student described Tuggle restraining P. R. for about ten minutes. (Although the plaintiffs refer generally to the *students'* statements, only one of the summaries of the classmates' statements includes any information about the duration of the headlock.)

The plaintiffs argue that the student's statement is admissible under OCGA § 24-8-803 (6), the business records exception to the hearsay rule. But hearsay within hearsay is admissible only if "each part of the combined statements conforms with an exception to the hearsay rule." OCGA § 24-8-805. Assuming without deciding that the investigator's report attached to her affidavit was admissible under the business records exception, that exception only overcame one layer of hearsay. See *In the*

5

*Interest of D. E.*, 313 Ga. App. 414, 415 (721 SE2d 627) (2011). The plaintiffs do not cite any other exception to overcome the second layer of hearsay, the summary in the report of the student's statement to the investigator. Thus, the student's statement is not admissible.

3. *Official immunity.*

The parties agree that Tuggle is entitled to official immunity unless she acted with

> actual malice or with intent to cause injury. 1983 Ga. Const., Art. I, Sec. II, Par. IX (d). "Actual malice," as that term is used in the constitutional provision, denotes "express malice," i.e., "a deliberate intention to do wrong," and does not include "implied malice," i.e., the reckless disregard for the rights or safety of others. A "deliberate intention to do wrong" such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs.

*Murphy v. Bajjani*, 282 Ga. 197, 203 (4) (647 SE2d 54) (2007) (citation omitted). Our Supreme Court has set a high bar for demonstrating actual malice so as to overcome a defendant's entitlement to official immunity. *D. H. v. Clayton County Sch. Dist.*, 52 FSupp.3d 1261, 1297-1298 (III) (B) (6) (N.D. Ga. 2014).

Relying on *Griswold v. Collins,* supra, 318 Ga. App. 556, the plaintiffs argue that Tuggle's holding P. R. in a headlock for a substantial period of time, in front of other students, while knowing that her actions violated Fulton County policies, supports an inference that she had an intent to harm P. R. and they point to what they characterize as her later denials and equivocations as evidence that she knows she committed a wrongful act.

First, we observe that the plaintiffs have presented no evidence that Tuggle's actions violated Fulton County policies. Although they reference a Fulton County policy against corporal punishment, they concede that Tuggle's motivation was not disciplinary. Nor have they cited to any record evidence of denials and equivocations. To the extent that they argue that Tuggle "refus[ed] to acknowledge any incident at all until pressed by her principal," and that this is evidence of her intent, we disagree. Tuggle explained at her deposition that when questioned by her principal and assistant principal a couple of weeks after the incident, she did not recall it. She thought about it and later that day told them about touching P. R., "the only incident [she] could come up with." In sum, the only evidence of malice the plaintiffs have presented is that Tuggle held P. R. in a headlock for a period of time that "felt like

7

forever," in front of other students. We do not believe that this evidence creates a jury question on the issue of malice or intent to harm.

In *Griswold*, we found that questions of fact as to a teacher's entitlement to official immunity precluded her from summary judgment on a second-grade student's assault and battery claims. 318 Ga. App. at 556. We held that the evidence, viewed most favorably to the plaintiff, showed that as the student was returning to her seat, the teacher summoned her and struck her bare leg with two rulers, leaving a red mark or bruise; that when the student approached the teacher with some schoolwork, the teacher told the student that her answer to one of the problems was incorrect and then grabbed the girl's shirt collar and pulled it tight, choking her and leaving red marks on her neck; and that the teacher made the student stand in a corner for a "time out" after the girl began dancing in class, and at the end of the "time out," the teacher grabbed the girl's shirt collar, twisted it, and pulled the girl forward, choking her, snapping her necklace and leaving red marks on her neck. Id. at 557 (1). We determined that "[w]hile a jury would not be compelled to accept [the student's] version of the events or to find that the nature of those actions reflected actual malice or wilfulness on [the teacher's] part, given the girl's depiction of [the teacher's] behavior, a jury *could* find that she deliberately intended to do wrong or to injure the

girl." Id. at 559 (2) (a) (emphasis in original). In other words, we found that the very nature of the acts as described by the plaintiff – the unprovoked choking and striking with rulers of a second-grader, sufficient to leave visible injuries – was circumstantial evidence of the teacher's intent to deliberately hurt the student. We do not find that the nature of the acts described by P. R. is circumstantial evidence of Tuggle's malice or intent to deliberately hurt him. According to P. R., Tuggle held him in a headlock for a significant period of time, but her grip was initially "pretty loose," although it got tighter but not tight enough to pull him over; and Tuggle told P. R. to work on his schoolwork while they walked around the room, indicating that she did not believe she held him in a way that immobilized him; P. R. was even able to read the assignment; P. R. was not injured, although his neck felt a "bit weird."

We find that this case is more akin to *Butler v. McNeal*, 252 Ga. App. 68 (555 SE2d 525) (2001), than to *Griswold*. In *Butler*, we concluded that the record lacked evidence showing that the teacher acted with actual malice or that she intended to injure the student, even though we accepted as true the student's account that the teacher purposefully pulled the student's chair out from under him, causing the student to fall to the ground. 252 Ga. App. at 68-70. See also *Jordan v. Blackwell*, No. 5:06-cv-214, 2008 U.S. Dist. LEXIS 75046, at *33 (III) (B) (2) (M.D. Ga., Sept.

9

29, 2008) (applying Georgia law to determine that school resource officer's actions of putting fighting student in a choke hold and walking her to principal's office did not give rise to a showing of actual malice, as no evidence suggested that he intended the harm that may have resulted to the student). Here, as in *Butler*, the ambiguous behavior within the classroom is not circumstantial evidence of malice or an intent to deliberately harm that would contradict Tuggle's direct evidence that she did not act with malice or an intent to deliberately harm. Although the evidence may demonstrate Tuggle's "frustration, irritation, and possibly even anger[, that] is not sufficient to penetrate official immunity." *Tittle v. Corso*, 256 Ga. App. 859, 862 (1) (569 SE2d 873) (2002) (citation and punctuation omitted). Accordingly, Tuggle is entitled to summary judgment.

*Judgment reversed. Ellington, P. J., and Dillard, J., concur.*