**SECOND DIVISION
RICKMAN, C. J.,
MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 3, 2022**

# In the Court of Appeals of Georgia

A22A0002. MCBRAYER et al. v. SCARBROUGH.

MILLER, Presiding Judge.

In this wrongful death action, Sherrie McBrayer appeals from the trial court's order granting judgment on the pleadings in favor of the Sheriff of Tift County, Georgia, Gene Scarbrough. On appeal, McBrayer argues that the judgment was error because (1) the trial court improperly determined that Tift County did not waive sovereign immunity by examining whether the injury arose from the deputies' use of the patrol car "as a vehicle" rather than whether the event is covered under the County's insurance; and (2) the trial court erred in ruling that the issue of insurance coverage was irrelevant to whether sovereign immunity had been waived. We conclude that the trial court properly ruled that Tift County did not waive sovereign immunity in this case, and we therefore affirm.

"On appeal, we review de novo the trial court's decision on a motion for judgment on the pleadings, and we construe the complaint in a light most favorable to the appellant, drawing all reasonable inferences in [her] favor." (Citation omitted.) *Hewell v. Walton County*, 292 Ga. App. 510, 510-511 (664 SE2d 875) (2008).

So viewed, the complaint alleges that, in April 2019, Tift County deputies tased and apprehended James Aaron McBrayer. The decedent's hands and feet were restrained, and the deputies allegedly placed him horizontally onto the back seat of a patrol car before leaving him unattended. The decedent then passed away while left unattended in the patrol car, and an autopsy revealed that he died as a result of excited delirium which was secondary to being tased. McBrayer, individually and as the decedent's surviving spouse and on behalf of the decedent's children, filed this wrongful death action against Scarbrough in his official capacity. She claimed that the incident arose from the deputies' negligent use of a motor vehicle, as contemplated by OCGA § 36-92-2, and that the patrol car was a "covered vehicle," as that phrase is used in OCGA §§ 33-24-51; 36-92-1; and 36-92-2. The complaint alleged that the deputies were negligent because (1) they placed the decedent face down in the back seat of the patrol car after having applied extreme force and restraint on him and left him unattended and unsupervised; and (2) they used the rear

2

passenger door to hold a cobble strap that was attached to the decedent's feet. Scarbrough filed a motion for judgment on the pleadings, contending that sovereign immunity barred the claim, and the trial court granted the motion. The trial court found that the allegations regarding the decedent's positioning and restraint in the patrol car did not relate to the use of the patrol car "as a vehicle" and that there had been no waiver of sovereign immunity for the negligent use of an insured motor vehicle. McBrayer appealed to the Supreme Court of Georgia, which then transferred the appeal to this Court.

1. In her first enumeration of error, McBrayer urges that the trial court improperly determined that Tift County did not waive sovereign immunity by examining whether the injury arose from the deputies' use of the patrol car "as a vehicle" rather than whether the event is covered under the County's insurance. We conclude that the trial court correctly found that Tift County did not waive sovereign immunity.

> Under our Constitution, Georgia counties enjoy sovereign immunity, and can be sued only if they have waived their immunity. A lawsuit against a [sheriff] in [his] official capacity is considered a suit against the county, and the [sheriff] is entitled to assert any defense or immunity that the county could assert, including sovereign immunity. The question, then, is whether the sovereign immunity of [Tift] County has

3

been waived with respect to the claim asserted against [Scarbrough] in this case.

(Citation omitted.) *Ankerich v. Savko*, 319 Ga. App. 250, 252 (1) (734 SE2d 805) (2012). "[W]hether a governmental defendant has waived its sovereign immunity is a threshold issue[,]" and "[a]ny waiver of sovereign immunity must be established by the party seeking to benefit from that waiver." (Citations omitted.) *Wingler v. White*, 344 Ga. App. 94, 99-100 (1) (808 SE2d 901) (2017).

Turning to the applicable statutes,

OCGA § 33-24-51 authorizes a county to secure insurance to cover liability for damages on account of bodily injury, death, and property damage "arising by reason of the county's ownership, maintenance, operation, or use of any motor vehicle" and provides that the county's sovereign immunity "for a loss arising out of claims for the negligent use of a covered motor vehicle is waived as provided in OCGA § 36-92-2. OCGA § 36-92-2 in turn provides for the monetary limits of the waiver.

(Punctuation omitted.) *McCobb v. Clayton County*, 309 Ga. App. 217, 218 (1) (a) (710 SE2d 207) (2011). The decision on whether "an event arises from the 'use' of a motor vehicle depends largely on the circumstances, and a bright-line definition is elusive. But statutes that provide for a waiver of sovereign immunity . . . are in

4

derogation of the common law and thus are to be *strictly construed against a finding of waiver*." (Citations and punctuation omitted; emphasis supplied.) *Bd. of Commrs. of Putnam County v. Barefoot*, 313 Ga. App. 406, 408-409 (1) (721 SE2d 612) (2011). On the occasions that we have found a waiver of sovereign immunity for the use of a motor vehicle, the vehicle was "actively in use when the injury arose," and we have further explained that "the question to be answered is whether the injury originated from, had its origin in, grew out of, or flowed from the use of the motor vehicle *as a vehicle*." (Citation omitted; emphasis in original.) Id. at 409 (1).

For instance, in *Gish v. Thomas*, 302 Ga. App. 854 (691 SE2d 900) (2010), a deputy transported the decedent to the Clayton County jail following a court appearance. Id. at 856. The decedent, who was previously determined to be potentially suicidal, was seated in the rear of the patrol car. Id. at 855-856. Upon arriving and parking at the jail, the deputy removed his gun and placed it on the front passenger seat. Id. at 856-857. When the deputy exited the vehicle to remove the decedent, the decedent retrieved the deputy's gun and shot himself. Id. at 857. This Court found that the decedent's suicide did not relate to the use of a patrol car "as a vehicle," and rather, the vehicle was essentially being used as a holding cell. Id. at 861 (2). This Court arrived at a similar result in *Tittle v. Corso*, 256 Ga. App. 859

5

(569 SE2d 873) (2002). In that case, while a deputy was investigating a crime scene, he shone the headlights and spotlight of the patrol car onto the plaintiff. Id. at 860. Later, the deputy allegedly "slammed" the plaintiff on the hood of the patrol car. Id. at 861. We ultimately determined that the plaintiff's injuries were not caused by the deputy's "use" of the patrol car for purposes of sovereign immunity. Id. at 864 (2).

Both *Gish* and *Tittle* are eminently instructive in this case, and we hold that the patrol car was not in "use" as that term is contemplated by OCGA § 36-92-2, and therefore Tift County did not waive sovereign immunity. According to the complaint, the deputies were negligent in allegedly placing the decedent face down in the patrol car, using the door to hold a cobble strap that was fastened to his feet, and leaving him unattended. Insofar as the deputies were utilizing the patrol car to confine and/or restrain the decedent, the car was not being used *as a vehicle*. Compare *McElmurray v. Augusta-Richmond County*, 274 Ga. App. 605, 613 (2) (618 SE2d 59) (2005) (motor vehicles were "used" because they allegedly spread sludge on the plaintiffs' land); *Mitchell v. City of St. Marys*, 155 Ga. App. 642, 644 (2) (271 SE2d 895) (1980) (truck was used "as a motor vehicle" where it contained an insect defogging device, and the government employee backed up the truck and sprayed chemicals on the plaintiff).

6

Additionally, the deputies' act of "loading" the decedent into the patrol car does not necessarily mean that the vehicle was "*actively* in use" in this case for purposes of sovereign immunity. This, too, is a fact-specific inquiry. And, the complaint here plainly and affirmatively alleges that the deputies placed the decedent in the vehicle, closed the door, and then left him unattended. There is no indication from the complaint that the car was running; that any deputy was seated in the car; that any deputy was poised to start the car or transport the decedent to any location; or that there are any factual allegations remotely suggesting that the deputies were "actively" using the patrol car. See *Saylor v. Troup County*, 225 Ga. App. 489, 490 (484 SE2d 298) (1997) (concluding that the injury did not arise out of "use" of motor vehicle, where injury occurred when county "van was inoperative, parked off the roadway with its engine not engaged"). Compare *Cawthon v. Waco Fire & Cas. Ins. Co.*, 183 Ga. App. 238, 240-241 (358 SE2d 615) (1987) (explaining, for insurance purposes, that whether the loading and unloading of children constituted the "use" of a school bus was fact-specific and that the bus was "used" where a child was crossing the road while the bus was "standing guard with its lights flashing, its stop signals

7

activated[,] and all visual signals functioning").[1] Accordingly, to the extent that the decedent's injuries stemmed from his being loaded into the patrol car, the vehicle was not in "use" for purposes of waiving sovereign immunity.

Although McBrayer claims that this Court's precedent has impermissibly added language to the statute by requiring that the motor vehicle be used "as a vehicle," this argument fails. Instead, this Court has merely required that the motor vehicle be used in its ordinary sense for purposes of sovereign immunity, since the terms "use" and "use of a covered motor vehicle" are not expressly defined in the statute. See *Monumedia II, LLC v. Dept. of Transp.*, 343 Ga. App. 49, 51-52 (1) (806 SE2d 215) (2017) (in considering the meaning of a statute, we "afford the statutory text its plain and ordinary meaning"). Even in the context of automobile insurance, where we have adopted a *liberal* definition of the term "use,"[2] we have long recognized that the term

---

[1] McBrayer cites one case in the insurance context, *Elliott v. Firemen's Ins. Co.*, 111 Ga. App. 49 (140 SE2d 524) (1965), where the use of a vehicle outrightly encompassed the loading and unloading of the vehicle. *Elliott*, however, concerned the construction of an insurance policy document that specifically included "loading and unloading" of the vehicle in the definition of the term "use." Id. at 50 (1).

[2] See *Gish*, supra, 302 Ga. App. at 860 (2) (explaining that in contrast to cases involving automobile insurance policies, where a term such as "use" may be broadly construed to effectuate coverage, statutes which provide for a waiver of sovereign immunity are to be strictly construed against a finding of waiver).

8

"use" cannot be construed "to embrace all its possible meanings and ramifications" because then "practically every activity of mankind would amount to a 'use' of something." (Citation and emphasis omitted.) *Assurance Co. of Am. v. Bell*, 108 Ga. App. 766, 772 (3) (134 SE2d 540) (1963) (explaining that the term "use" means the "ordinary use or employment" of the instrumentality, that the term "must be considered with regard to the setting in which it is employed," and that a child who unwittingly released the emergency brake in a car did not use the car "as a motor vehicle").

We also reject McBrayer's assertion that "the restrictive analysis" that this Court has used in sovereign immunity cases has been supplanted by a "broader view" and that this Court's precedent has contravened "the remedial intent" of OCGA §§ 33-24-51 (b) and 36-92-1 et seq. In advancing this argument, McBrayer makes an untenable connection between the present appeal and *Glass v. Gates*, 311 Ga. App. 563 (716 SE2d 611) (2011). In *Glass*, however, this Court was faced with a discreet legal question that is not involved here, i.e., whether a tractor or a bush hog constituted "any motor vehicle" under OCGA § 33-24-51 (a), based on a *separate* definition of the term "motor vehicle" found in OCGA § 36-92-1 (6), which falls

under a "different statutory scheme." Id. at 571-573 (1). Also, the Court's characterization of the sovereign immunity laws as "remedial in nature" was limited in context. Id. at 573 (1). The Court explained that previously, "a plaintiff's recovery against a local government could vary from county to county depending on the insurance coverage purchased." Id. at 569 (1). In revising the sovereign immunity laws, the legislature "enact[ed] a new set of mandatory waiver provisions applicable regardless of whether insurance had been purchased." Id. at 573 (1). The Court in *Glass*, however, did not broaden the meaning of the term "use," nor did it address, much less alter, the fundamental and long-standing principle that "statutes providing for a waiver of sovereign immunity are in derogation of the common law and thus are to be strictly construed against a finding of waiver." (Citation omitted.) *Small v. Chatham County*, 360 Ga. App. 500, 503 (1) (861 SE2d 437) (2021). The Supreme Court of Georgia did nothing to modify this framework in affirming the *Glass* decision, *Gates v. Glass*, 291 Ga. 350 (729 SE2d 361) (2012). Nor did the Supreme Court disturb its own previous directive that "legislative waivers of sovereign immunity [must] be strictly construed." *Sawnee Elec. Membership Corp. v. Ga. Dept. of Revenue*, 279 Ga. 22, 25 (3) (608 SE2d 611) (2005). See also *State v. Henderson*, 263 Ga. 508, 509 n.3 (436 SE2d 209) (1993) (strict construction of a statute can also

10

comport with its remedial purpose). Thus, McBrayer's reliance on *Glass* does not aid her position, and the trial court properly found that the patrol car was not in "use" so as to effectuate a waiver of sovereign immunity.

2. Next, McBrayer claims that the patrol car in this case was covered by automobile insurance and that, rather than focusing on how the vehicle was used, this Court should analyze whether the insurance policy covers the alleged event. This argument is not meritorious.

As our Supreme Court recently explained, "the General Assembly [has] established an automatic waiver of sovereign immunity for losses arising out of claims for the negligent use of covered motor vehicles up to certain prescribed limits[.]" *Atlantic Specialty Ins. Co. v. City of College Park*, __ Ga. __,__ (2) (869 SE2d 492) (2022).[3]

> OCGA § 36-92-2 (b) only grants a waiver of sovereign immunity for a loss arising out of claims for the negligent use of a covered motor vehicle to the extent and in the manner provided. . . . Thus, to establish a waiver of sovereign immunity, [McBrayer] is required to prove not

---

[3] Previously, "courts had to analyze the applicable insurance policy to determine whether the policy covered the particular claim at issue and thus waived sovereign immunity, and to what limit." *Atlantic Specialty Ins. Co.*, supra, __ Ga. at __ (2).

11

only the existence and extent of insurance coverage but also that the negligent use of the county vehicle was both the cause in fact and the proximate cause of [the decedent's] injury. *The procurement of insurance under this statute does not constitute a waiver of sovereign immunity with regard to personal injury caused by the county's negligence, unless the negligence of its 'officer, agent, servant, attorney, or employee' arises from the use of a motor vehicle.*

(Citations, punctuation, and emphasis omitted; emphasis supplied.) *Ankerich*, supra, 319 Ga. App. at 253 (1). Therefore, the trial court properly determined that the issue of waiver was dependent on whether the deputies had negligently used the patrol car as a vehicle.

Strictly construing the term "use" in the context of sovereign immunity, we hold that McBrayer cannot recover in this case because the deputies were using the patrol car to restrain or confine the decedent, and the car was not in "use" as a vehicle in its ordinary sense. Thus, while this appeal presents unfortunate circumstances, sovereign immunity protects Scarbrough from legal action.

Accordingly, we affirm the trial court's order granting Scarbrough's motion for judgment on the pleadings.

*Judgment affirmed. Rickman, C. J., and Pipkin, J., concur*.

12