**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 13, 2023**

# In the Court of Appeals of Georgia

A22A1309. HALL v. ACKER.

MILLER, Presiding Judge.

This is a lawsuit involving an incident between Keturah Hall, a high school student, and Antwan Acker, a school security officer, wherein Acker allegedly pepper sprayed Hall in the face and then failed to wash the spray off for a considerable amount of time thereafter. The trial court granted Acker's motion for summary judgment after concluding that he was entitled to official immunity because the acts Acker took against Hall were discretionary acts and because Hall failed to present evidence that Acker acted with actual malice or intent to injure, and Hall now appeals. While we agree with the trial court that Hall has not shown that Acker acted with actual malice or intent to injure, we agree with Hall that Acker's failure to wash or remove the pepper spray from Hall's face as per the school policy was a ministerial

act. Because the policy clearly stated that "[o]fficers *will* flush the eyes and face of the affected subject with clean water," the policy did not leave any room for thought or discretion. Accordingly, we reverse the grant of summary judgment on the issue of official immunity in part, and we remand this case for the trial court to address whether genuine issues of material fact remain on Hall's claims.

"On appeal from the grant of summary judgment, legal questions are reviewed de novo, and this Court also conducts a de novo review of the evidence, viewed in the light most favorable to the nonmoving party, to determine if there is a genuine issue of material fact." (Citation omitted.) *Erickson v. Walker*, 359 Ga. App. 630, 631 (859 SE2d 804) (2021).

The parties' accounts of the events greatly differ, but viewed in the light most favorable to the plaintiff, the record shows that at the time of the incident, Hall was a sixteen-year-old student at Cedar Grove High School. During class one day, Hall's Spanish teacher, Olivia Jordan, announced that she was going to count a particular test grade twice. Hall verbally expressed frustration with this decision, and Ms. Jordan ordered Hall to step into the hallway while she contacted security. Acker and

another officer responded to the situation to assist Ms. Jordan. Acker then asked Hall to leave the classroom and come with him. The following exchange[1] occurred:

> ACKER: All I'm asking you is to come talk to me.
> HALL: All right.
> MS. JORDAN: Oh, no. Take your stuff.
> HALL: No, I'm not leaving because I didn't do nothing wrong.
> MS. JORDAN: Well, when you walk out the door, don't come back in.
> . . . .
> ACKER: Now, ladies. Bring your stuff. Come on.
> MS. JORDAN: Now, they're being nice.
> HALL: I'm being -- (inaudible)
> ACKER: (inaudible) come on and we - - we are going ahead and talk like we have a reason or you wind up getting disruptive in school and you wind up going to jail for something stupid. I mean, it's just idiotic. That's why I'm asking - - that's why I'm asking you to step out. It's just that easy. Just get up and step out because if I have to come over there - - like I told you before, staff members can't put their hands on you. I am the police. I can put my hands on you and can't nobody, your mama, you[r] daddy, say nothing.
> UNIDENTIFIED VOICE: Oh, my God.
> ACKER: You've got a choice. You've got a choice. Get up on your own or you can put on bracelets and you going anyway. I'm just - - I'm asking will you come with me . . . (inaudible)? Just come - - just come talk to me. That's all I'm asking you.
> HALL: So you could put - - man, what - - you not fixing to touch me, bro.
> ACKER: Ma'am. I'm not going to (inaudible). Do you understand?
> HALL: (inaudible) no. I don't give a fuck. (inaudible) you not fixing to put your mother-fucking hands on me. (inaudible)
> ACKER: (Inaudible) nuh-uh. It's too late now. Come on now. Don't make this hard. Come on now. . . .

---

[1]A transcript of an audio recording of the incident was submitted as part of the summary judgment evidence.

3

Following the above exchange, Acker handcuffed Hall, slammed her to the ground, put her in handcuffs, and then pepper sprayed her in her face. Acker led Hall to his office, handcuffed her to a chair in the office, and called an ambulance. Hall told Acker that her eyes and face were burning, and she "begged" for someone to get water and put it on her face. Approximately ten minutes later, another teacher came in and assisted Hall by wiping the tears and mucus from her face. However, Hall's face was not flushed with water, nor did Acker take any other steps to decontaminate the pepper spray. Approximately fifteen minutes after arriving at Acker's office, an EMS team arrived at the office and applied water to decontaminate Hall's face. As a result of the use of the pepper spray without subsequent decontamination, Hall suffered and continues to suffer skin burning, irritation, discoloration, and loss of her eyebrows.

The DeKalb County School Department of Public Safety has promulgated a Standard Operating Procedure Manual that dictates the procedures allowed for public safety officers in schools. The Manual instructs public safety officers to use "reasonable judgment in exercising powers of arrest," but it provides certain mandates for the use of force in connection with an arrest. For the use of pepper spray specifically, the Manual provides that "[a]ny affected persons should be removed

from the contaminated area as quickly and safely as possible" and that "[o]fficers will flush the eyes and face of the affected subject with clean water as soon as possible after the subject is secured." Acker was aware of the relevant guidelines at the time of the incident.

Hall filed the instant lawsuit against Acker, alleging claims of excessive force, negligence, assault and battery, and intentional infliction of emotional distress as well as attorney fees and punitive damages. Acker filed a motion for summary judgment, alleging that he was entitled to official immunity and that Hall failed to present sufficient evidence to create a genuine issue of material fact on all of her claims. The trial court granted the motion for summary judgment on the grounds of official immunity, concluding that (1) Acker's acts trying to manage Hall's behavior were discretionary acts; (2) Acker did not violate any ministerial duty; and (3) there was no evidence that Acker acted with any actual malice or intent to harm Hall. This appeal followed.

1. In Hall's main enumeration of error challenging the trial court's ruling,[2] she argues that the trial court erred in concluding that Acker was entitled to official

---

[2] We address Hall's enumerations of error in a different order than presented in her brief.

immunity. She first argues that Acker's failure to wash her face after using the pepper spray was the violation of a ministerial duty,[3] which would only require her to prove that Acker acted negligently. We conclude that the failure to wash Hall's eyes out after applying pepper spray was the violation of a ministerial duty and that there was evidence in the record that Acker negligently carried out that duty, and so we reverse the grant of summary judgment on the issue of official immunity.

> The doctrine of official immunity, also known as qualified immunity, affords limited protection to public officers and employees for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption. A public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight. Thus, the single overriding factor is whether the specific act from which liability arises is discretionary or ministerial.

(Citations and Punctuation Omitted.) *Howell v. Willis*, 317 Ga. App. 199, 200 (729 SE2d 643) (2012).

---

[3] Hall does not appear to dispute that Acker's decisions to use force and to use the pepper spray in the first place are discretionary acts.

A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citation omitted.) *Murphy v. Bajjani*, 282 Ga. 197, 199 (1) (647 SE2d 54) (2007). Futhermore, it is generally true that the "duty to supervise, control and monitor students is a discretionary function." *McDowell v. Smith*, 285 Ga. 592, 594 (678 SE2d 922) (2009). "But the determination of whether the action at issue is discretionary or ministerial is made on a case-by-case basis, and the dispositive issue is the character of the specific actions complained of, not the general nature of the job." (Citation omitted.) *Barnett v. Caldwell*, 302 Ga. 845, 848 (II) (809 SE2d 813) (2018). "In short, the important question in the context of official immunity is . . . whether the official owed a duty that is particularized and certain enough to render her duty a ministerial one." (Citation omitted.) Id. Thus, our analysis will focus on whether Acker owed Hall a particularized duty that is certain enough to render that duty a ministerial one.

Here, the DeKalb Public Schools' policy dictates that "[o]fficers *will* flush the eyes and face of the affected subject with clean water as soon as possible after the

7

subject is secured." A plain and ordinary reading of the policy leads to the sole conclusion that this is a mandatory duty, not a permissive one requiring some thought or degree of discretion as to whether to flush pepper spray from a secured student's eyes. The policy also prescribes a "simple, absolute and definite" duty to perform the task of flushing a student's eyes with water after the student is secured and does not leave any room for thought or discretion or the weighing of various factors and circumstances as to what task to perform. Thus, we conclude that the DeKalb County Public Schools' policy requiring an officer to flush a student's eyes with water after pepper spray is used on them created a ministerial duty. See *McDowell*, supra, 285 Ga. at 593-594 (policy mandating that school officials must consult a student's information card and consult an administrator before releasing a student for dismissal set out actions that "were simple, absolute and definite, and required the execution of specific tasks without any exercise of discretion" set out a ministerial duty). Additionally, there was evidence to show that after Acker pepper sprayed Hall, Hall was handcuffed to a chair and unable to move while in Acker's office, that Hall was was not moving or combative while handcuffed to the chair, and that the lack of immediate decontamination caused her to suffer the skin burning, irritation, discoloration, and loss of her eyebrows. Thus, there is evidence in the record to show

8

that Acker negligently performed a ministerial duty that caused damage to Hall, and so official immunity does not apply to bar Hall's claims regarding the negligent failure to flush her eyes of pepper spray.

Acker argues that the policy's use of the phrase "as soon as possible" introduces ambiguity into the policy that renders it a discretionary act because it does not define what constitutes "as soon as possible,"[4] but we reject this argument. It is true that the introduction of an ambiguous or undefined term can render a policy a discretionary duty if the official is required "to exercise personal deliberation and judgment by examining the facts and reach a reasoned conclusion with regard to the applicability of the dictates of the written policy." *Grammens v. Dollar*, 287 Ga. 618, 620-621 (697 SE2d 775) (2010). But this generally occurs when the term or ambiguity requires the public official to use their discretion to determine *whether the policy applies to the situation in the first place*. See id. at 620 ("In the situations

---

[4] In so doing, Acker cites to our decision in *Davis v. Effingham County Bd. of Commrs.*, 328 Ga. App. 579, 585-586 (2) (760 SE2d 9) (2014), wherein we concluded that a County policy requiring workers to "fix any potholes along [a specific road] as soon as possible" to the extent they constituted a "road hazard" was a discretionary duty, not a ministerial duty. But our decision in that case did not turn on the meaning of the phrase "as soon as possible" but instead turned on the extensive discretion given to the county officials as to what constituted a "road hazard." See id. at 585-586 (2). Because we did not parse the "as soon as possible" language in *Davis*, our decision in that case is not dispositive in this case.

9

presented by previous cases [which had found a ministerial duty], the written policy did not require the public official to decide whether the condition that was the necessary prerequisite to the ministerial act existed."); *Melton v. McCarthan*, 356 Ga. App. 676, 678 (1) (848 SE2d 684) (2020) (ministerial duty was found when the evidence showed that the public official "had no discretion to determine whether an event triggered the duty to create an incident report."). When the policy clearly mandates a task to be done but leaves some discretion to the employee as to the *manner* in which to accomplish that task, "[t]he execution of [that] specific task is characterized as ministerial even though the manner in which it is accomplished is left to the employee's discretion." (Citation omitted.) *Lincoln County v. Edmond*, 231 Ga. App. 871, 874 (2) (501 SE2d 38) (1998) (policy requiring a public officer to remove a tree lying across a road was ministerial even though it granted him discretion to choose the manner in which the task would be performed because the discretion as to how to remove the tree "did not change the fact that the tree *must* be removed."). Here, DeKalb County's policy mandates that an officer flush out a student's eyes with water as soon as possible once pepper spray is used, even though there potentially may be some discretion afforded to an officer to determine the time and the manner in which it takes place. Thus, we conclude that the "as soon as possible" phrase does

10

not add ambiguity to the policy that would render it discretionary rather than ministerial.

Acker finally points to the facts of the situation, noting that there is evidence that the responses by the other teacher and by EMS were sufficient to constitute treatment "as soon as possible" under the policy. But these arguments go to the question of whether Acker was negligent in carrying out his duties under the pepper spray policy – a question properly reserved to the factfinder considering the numerous factual disputes about what actually occurred – not whether the policy itself is ministerial or discretionary in nature.

Accordingly, DeKalb County's policy requiring Acker to flush out Hall's eyes after using pepper spray sets out a specific duty that is ministerial in nature such that Hall need only prove that Acker acted negligently in carrying out said policy. Because there is evidence in the record to create a fact issue as to such negligence, we conclude that the trial court erred by granting official immunity to Acker for his alleged failure to decontaminate Hall following his use of pepper spray.

2. Hall further argues that the evidence could alternatively show that Acker acted with actual malice or an intent to injure, which would deny Acker official immunity even for the discretionary acts of using force to restrain and detain her and

for using pepper spray during the altercation. Based on the record and our caselaw, we conclude that Hall has not shown that Acker acted with actual malice.

> Actual malice, as that term is used in the constitutional provision, denotes 'express malice,' i.e., a deliberate intention to do wrong, and does not include 'implied malice,' i.e., the reckless disregard for the rights or safety of others. A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs. Our Supreme Court has set a high bar for demonstrating actual malice so as to overcome a defendant's entitlement to official immunity.

(Citations and punctuation omitted.) *Tuggle v. Rose*, 333 Ga. App. 431, 434 (3) (773 SE2d 485) (2015). An intent to deliberately harm must be shown, and "frustration, irritation, and possibly even anger [are] not sufficient to penetrate official immunity." (Citations and punctuation omitted.) *Tittle v. Corso*, 256 Ga. App. 859, 862 (1) (569 SE2d 873) (2002).

Here, Hall has not met the high bar for showing that Acker acted with actual malice. First, the mere fact that Acker later left Hall with pepper spray on her face for an extended amount of time also does not rise to the level of evidence necessary to show an act of actual malice. See *Tuggle*, supra, 333 Ga. App. at 434-436 (3) (fact that teacher held student in a headlock for an extended amount of time was not

12

sufficient by itself to show intent to injure or actual malice). Additionally, Acker's alleged use of profanity and physical threats during the confrontation in the classroom do not show, as a matter of law, that he had a deliberate intent to harm Hall. See *Tittle*, supra, 256 Ga. App. at 862-863 (1) (officer's use of profanity, threats, and physical force by slamming the plaintiff against the hood of a car did not show that the officer had a deliberate intent to injure the plaintiff). And the record evidence, even viewed in Hall's favor, shows that Acker initially responded to the scene calmly. Furthermore, the evidence is unrefuted that Acker took at least some steps to alleviate Hall's pain by calling EMS. Thus, while Hall presented evidence that Acker acted with perhaps "frustration, irritation, and possibly even anger," *Tittle*, supra, 256 Ga. App. at 862 (1), Hall has not shown that he acted with actual intent to injure her.

3. In two enumerations of error, Hall finally argues that there were genuine issues of material fact on her claims that would preclude summary judgment. Because the trial court only ruled on the issue of official immunity, we decline to address these arguments at this time, even under our "right for any reason" rule, and instead leave these arguments for the trial court to address in the first instance on remand. See *City of Sandersville v. Usry*, 365 Ga. App. 426, 432 (2) n.15 (878 SE2d 768) (2022)

13

(declining to apply the right-for-any-reason rule to affirm a denial of summary judgment based on an argument the trial court never ruled upon).

Accordingly, we conclude that Acker's failure to wash or remove the pepper spray from Hall's face as per the school policy was the violation of a ministerial duty because the policy clearly mandated that this task be done and did not leave any room for thought or discretion. We therefore reverse the grant of summary judgment to Acker on official immunity grounds for the failure to decontaminate and remand for the trial court to address in the first instance Acker's arguments as to whether Hall has presented sufficient evidence to create a genuine issue of material fact on her claims. We affirm the trial court's grant of official immunity based on Acker's other alleged acts.

*Judgment affirmed in part, reversed in part, and case remanded. Rickman, C. J., and Pipkin, J., concur.*